**PERGAMENT et al. v. FRAZER et al.**

No. 7354.

United States District Court
E. D. Michigan, S. D.

Oct. 12, 1949.

See also D.C., 93 F.Supp. 13.

Samuel L. Chess, New York City, Perlman, Goodman, Hecht & Chesler, Chicago, Ill., and Fischer & Fischer, Detroit, Mich., for plaintiffs.

George E. Brand and George E. Brand, Jr., Detroit, Mich., for defendants Permanente Products Company and the Permanente Metals Corporation.

Edward T. Kane, U. S. Atty., and Roger P. O'Connor, Asst. U. S. Atty., Detroit, Mich., for defendants United States of America and Reconstruction Finance Corporation.

Dykema, Jones & Wheat, Detroit, Mich., for defendant Otis & Co.

PICARD, District Judge.

Defendants, United States of America, Reconstruction Finance Corporation, "Metals," and "Products" respectively move to dismiss the above action as against each of them for the reasons announced in this memorandum and order. This court believes that the extensive briefs filed by "Metals," "Products" and plaintiffs so completely cover the issues that we deem it unnecessary needlessly to add to the task of the courts to which this matter may eventually be appealed by writing an extensive opinion.

1. **As to Motion to Dismiss by United States of America.**

■ The court grants this motion because the sovereignty has not consented to be sued as a co-defendant and consent to such a suit against the United States may only be granted by Congress. Lynch v. United States, 1933, 292 U.S. 571, 581, 54 S.Ct. 840, 78 L.Ed. 1434; United States v. Shaw, 1939, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.

2. **As to Motion to Dismiss by Reconstruction Finance Corporation.**

The court grants this motion because two of the real parties in interest in this suit are the United States and War Assets Administration (duties now being taken over by General Services Administration.) See S.W.P.A. Reg. 1, 9 F.R. 5096 whereby RFC is made disposal agent for industrial real property. The disposal functions of RFC were assigned to War Assets Corporation January 15, 1946 by General Amendment 1, 11 F.R. 408. Disposal powers of the War Assets Administration were transferred to the General Services Administration June 29, 1949. H.R. 4754, 18 U.S. Law Week, pp. 1–13.

■ True, title to the property in question is in RFC which can sue and be sued

but if a judgment were obtained as against RFC it could not be enforced. "The responsibility and authority for disposing of the property and for its care and handling pending disposal are by the terms of the Surplus Property Act vested in War Assets Administration * * *." (General Services Administration.) Parenthesis ours. United States v. Shofner Iron & Steel Works, 9 Cir., 168 F.2d 286, 287.

██ The court will and should not render a judgment that it cannot enforce. District of Columbia v. Eslin, 1901, 183 U.S. 62, 22 S.Ct. 17, 46 L.Ed. 85.

### 3. As to Motion to Dismiss by "Products."

The court denies this motion, first because there are two theories under which plaintiffs are proceeding; one in equity and the other, an action for damages. Perhaps in equity the RFC and United States would be indispensable parties but not in law nor for an accounting as an accounting is herein anticipated by the pleadings.

██ Plaintiffs are suing for an alleged fraud or tortious act. They can, if successful, recover damages. However, we do not rely on plaintiffs' theory that a "constructive trust" has been created. See Nelson Development Co. v. Ohio Oil Co., D.C., 1942, 45 F.Supp. 933; and Union Guardian Trust Co. v. Emery, 1940, 292 Mich. 394, 290 N.W. 841 for definition. It is our further opinion that it would be advisable if the third count would be rewritten to cover specifically damage and not an equity action, conforming with our holding.

██ Secondly, we hold that service on "Products" was good. Whether plaintiffs can prove their case against "Products" so as to subject "Products" to damages, is another matter that should wait trial. "Products" is admittedly doing business in Michigan and has designated an agent for receipt of process. Service on it falls squarely within the Federal Rules of Civil Procedure, Rule 4(d) (3) and (7), 28 U.S.C.A. and the Michigan Statute Section 27.759, 27.761, Stats.Ann., Comp. Laws 1948, §§ 613.29, 613.31.

### 4. As to Motion to Dismiss by "Metals."

██ We are aware of the long line of authorities holding that when a parent organization wholly owns a subsidiary which does business in a state other than the domicile of the parent that that alone does not necessarily constitute a "doing business" by the parent corporation in the forum where the action is being brought; neither does the over-lapping of directors nor other acts by and between the two corporations indicate close relationship.

██ "Metals" is a foreign corporation and claims it does not do business in Michigan. "Products", it is alleged, is the alterego of "Metals." Admittedly "Products" is "Metals," sales agent. That alone, or aided by the other facts, does not make its officers or its appointed resident agent, persons upon whom service would be good as against the parent organization. Peterson v. Chicago Rock Island & Pac. Ry., 1906, 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; Cannon Mfg. Co. v. Cudahy Packing Co., 1924, 267 U.S. 333, 45 S.Ct. 250, 69 L. Ed. 634; Consolidated Textile Corporation v. Gregory, 1933, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047; People's Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; and Matrozos v. Gulf Oil Corporation, D.C.1943, 54 F. Supp. 714.

However, it is possible for a foreign corporation to do business in another state and that is particularly true in Michigan. Furthermore, it can do that business through another corporation as well as an individual. The test of whether or not the parent is actually doing business in Michigan so as to subject its subsidiary to process bringing the parent company within the jurisdiction lies in the facts as they are developed and we have not sufficient of these facts before us. People's Tobacco Co. v. American Tobacco Co. (supra). However, it appears to this court at this time that "Metals" is doing business in Michigan and we arrive at that opinion on the theory that "Products" is the alterego of the sales department of "Metals" in this state and it was the instrument by which "Metals" did business in Michigan.

Clover Leaf Fr. Lines v. Pacific Coast Wholeslrs. Ass'n, 7 Cir., 1948, 166 F.2d 626; Bator v. Boosey & Hawkes, D.C. 1948, 80 F.Supp. 294; Williams v. Campbell Soup Co., D.C.1948, 80 F.Supp. 865, and Frene v. Louisville Cement Co., 77 U.S.App.D.C.129, 134 F.2d 511, 146 A.L. R. 926.

There has been a change in the attitude of the courts towards this much debated and perplexing question that has been before our tribunals for years and there is a tendency now to cut through the maze of corporate appearances to arrive at the true status and relationship. The fiction of corporate entity is no longer controlling. It is possible and permissible for a corporation not to desire to do business in a certain state and to create a separate corporation for that purpose. But if the separate corporation is actually so attached to the parent that the parent is in fact doing business in this state then the court must not permit vociferous contrary claims of the parent to prevail. In the modern development of our business and general economic life, with the great possibilities of almost complete annihilation of space and time, the courts do not and should not encourage the creation of corporate empires which have subsidiaries trading on the strength of the main organization's name, financial position or products, only to have those who deal with the main organization, through the subsidiaries, learn that when question of suit arises it is necessary for the offended party to travel across the continent at great expense and inconvenience in order to find a jurisdiction where his suit may be tried. If this were an ordinary creditor bringing a law suit against defendant "Metals" one's thoughts would rebel at such conclusion of law. That it is a stockholders' suit does not change the fundamental equities. The following cases are indicative of the liberal trend the new decisions are taking. Industrial Research Corp. v. General Motors Corp., D.C.1928, 29 F.2d 623; Clover Leaf Fr. Lines v. Pacific Coast Wholeslrs. Ass'n, supra; Fish v. East, 10 Cir., 1940, 114 F.2d 177, and Commerce Trust Co. v. Woodbury, 8 Cir., 1935, 77 F.2d 478.

■ We therefore deny the motion of defendant "Metals" to dismiss on jurisdictional grounds but, without prejudice, since the facts when finally before this court in detail might be sufficient to sway the court's present opinion to an opposite holding.

Right today we are somewhat impressed by the inaccuracies pointed out by defendant "Metals" in plaintiffs' brief which have not been challenged by plaintiffs and the promise in defendant's two later briefs that when the proper time comes, further inaccuracies would be developed. Nevertheless this cannot be done by statements made in any interchange of briefs.

In denying "Metals'" motion we are also aware that the Michigan Statute is broader in the permissive features governing service on foreign corporations. "In all cases where suit is brought against a foreign corporation, process may be served upon any officer or agent of such corporation within this state, and *any person representing such corporation in any capacity*, shall be deemed an agent within the meaning of this section." (Emphasis supplied.) Section 27.761, Stats.Ann., Comp. Laws 1948, § 613.31.

**5. As to the Parties Plaintiffs.**

■ Pergament was not a stockholder at the time of the alleged wrong. He bought this stock about a year and a half afterwards and now seeks to sue on the theory that the wrong allegedly committed by defendants is "continuing." This court does not approve of any one buying a law suit that may eventually have only nuisance value—or for that matter, real merit. Not only do the Federal Rules prohibit this under Rule 23(b) but Michigan Case Law bars it. Wagner Electric Corp. v. Hydraulic Brake Co., 1934, 269 Mich. 560, 566, 257 N.W. 884. Furthermore, plaintiffs' position that the wrong is "continuing" doesn't make sense. Every harm to a corporation is "continuing" when some one has taken away some of its assets wrongfully. If the plaintiff had the right to force RFC to accept Kaiser-Frazer as the lessee Pergament might be a proper party but under our present holding he

cannot be. To hold otherwise would inject further uncertainty into the conclusiveness of every act of a corporation and would open the flood gates to litigation of questionable merit. Pergament as a plaintiff may not maintain his action.

### 6. As for Plaintiff London.

We don't conceive that the law should require a stockholder to do something that is unnecessary or works a great injustice. Let us suppose that one single stockholder who owned 50 or 100 shares, which he had bought with his life's earnings, wanted to bring this kind of action. According to "Metals" he would have to spend an unconscionable amount of money and time in order to try to get a stockholders' meeting together. The law cannot require that and in our opinion doesn't. The law does not demand a futile action especially in this kind of case where the directors are allegedly guilty of the fraudulent conduct. In addition, Otis & Company made such demand on the directors which was rejected. That's all that is necessary in Michigan. Central Holding Co. v. Bushman, 1927, 238 Mich. 261, 271, 213 N.W. 120. Why ask the very people who are responsible for the alleged wrong to undo their wrong when that request has already been made and refused? Therefore we hold that London should be permitted to continue his suit. We add the further ground that demand on the owners of 4,500,000 shares would be practically unfeasible. Rule 23(b) had its origin in the equity rules and should be equitably construed.