Wᴵʟʟᴵᴀᴍ Eʟsᴛᴇʀ and Aɴɴᴀ F. Cᴏʜᴇɴ,

*vs.*

Aᴍᴇʀᴵᴄᴀɴ Aᴵʀʟᴵɴᴇs, Iɴᴄ., a Delaware corporation.

*New Castle, October 14, 1953.*

*Robert C. Barab,* for plaintiffs.

*Richard F. Corroon,* of the firm of Berl, Potter & Anderson, and *Malcolm A. MacIntyre* and *Harold M. Childers,* of the firm of Debevoise, Plimpton & McLean, of New York City, for defendant.

BRAMHALL, Vice Chancellor: The amended complaint filed by plaintiffs alleges that plaintiff William Elster was the owner and holder of shares of common stock of defendant since June of 1951, and that plaintiff Anna F. Cohen was the holder of shares of defendant since February of 1950. It is further alleged in the complaint that on or about September 12, 1950, defendant granted options to 30 of its executive employees to purchase a total of 143,000 shares of its common stock at a price of $11.70 per share, and that on or about May 21, 1952, the defendant granted further options to 289 of its executive and supervisory employees to purchase a total of 105,000 shares of its common stock at a price of $12.50 per share.

According to the complaint, plaintiffs' action is based upon the following facts: All of said options are exercisable immediately upon their issuance, with no requirement that the respective optionees remain in the employ of defendant for any specified time. The option plans and the issuance of the options, as adopted by the board of directors of defendant, were in each instance made subject to the approval of the stockholders. At the meeting of the stockholders at which the option plans were presented for approval a substantial minority thereof voted against the plan, the stock of plaintiffs not being voted in favor thereof.

It is also alleged in the complaint that the granting of these options constitutes a gift of valuable corporate assets in that the corporation did not receive from the respective optionees any valid or sufficient consideration in exchange therefor; that the market price of defendant's common stock at the time of the exercise of portions of these options substantially exceeded the option price; and, that no demand has been made upon the managing directors of defendant to rescind the outstanding options because such demand would have been futile, inasmuch as some of the options were issued to directors of defendant and said directors would not take action which might result in a declaration that their own earlier acts were illegal. It is also alleged in the complaint that failure to enjoin defendant will result in irreparable injury to defendant and its stockholders.

This court is asked to enjoin defendant from honoring the exercise of the option rights, to direct defendant to take appropriate steps

or institute appropriate proceedings to cancel or reacquire such shares of stock as have been issued pursuant to said options or to recover for defendant such profits as may have been made by any resale of stock acquired by the exercise of said options.

Defendant prays for an order, pursuant to *Rules of Court of Chancery, Rule* 56, *Del.C.Ann.,* directing this court to order the dismissal of the complaint with respect to plaintiff Anna F. Cohen, on the ground that she has ratified the granting of the options of which she complains. Defendant further prays for an order pursuant to *Rule* 56 for summary judgment, determining that the options, even if granted without consideration, are valid and binding as between the defendant and the optionees under the laws of the State of New York, which defendant contends, are applicable to the enforcibility and validity of stock options as between defendant and the optionees.

Defendant under *Rule* 12(*b*)(6) of this court has moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted upon the ground that the prayer of the complaint is solely for injunctive relief, whereas, any injury resulting from the exercise of these options can properly be the subject only of a claim for monetary damages from the directors authorizing the issuance of the options or from the optionees. Defendant further prays for an order pursuant to *Rule* 23(*b*), dismissing so much of the complaint on the part of the plaintiff William Elster as concerns the alleged grant of options by defendant on September 12, 1950, prior to the time plaintiff Elster became a stockholder.

I shall first consider the motion for summary judgment as to plaintiff Anna F. Cohen. It is now conceded by both plaintiffs that the stock of Anna F. Cohen was voted in favor of the option plans which she now seeks to attack.

 It is well established that a stockholder cannot complain of corporate action in which, will full knowledge of all the facts, he or she has concurred. *Finch v. Warrior Cement Corporation,* 16 *Del.Ch.* 44, 141 *A.* 54. There is no averment in the complaint of any failure on the part of defendant, or of any of those charged with its management, to make full disclosure of all the facts relating to the

option plans sought to be attacked. According to the affidavit offered by defendant, which is not disputed, all facts pertinent to the option plans had been placed upon the public records of the New York Stock Exchange and had been forwarded to every stockholder of record of defendant, as required by the regulations of the Securities and Exchange Commission. She therefore had ample notice of all pertinent facts surrounding the adoption of the option plans at the time the shares which she held were voted in favor thereof. *Goldboss v. Reimann, (D.C.S.D.N.Y.)* 55 *F.Supp.* 811.

I therefore conclude that plaintiff Anna F. Cohen has no standing to attack the options issued according to the stock option plan and that summary judgment must be entered against her. Hereafter in this opinion references to "plaintiff" will refer solely to plaintiff William Elster.

I next consider the question of whether or not the present action is a stockholder's derivative action or an action for the protection of the individual rights of plaintiff. Defendant contends that as to the options granted in September of 1950 the complaint is insufficient on the ground that this is a derivative action and since plaintiff acquired his stock subsequent to September, 1950, plaintiff is prevented under *Rule* 23(*b*) of this court from pressing this action as to that option plan. Plaintiff contends that the action is not a derivative action and that therefore *Rule* 23(*b*) does not apply. He further states that even if this court should decide that the action is derivative, he would not be prevented from proceeding with his action as to the first option plan because, as he alleges, the wrong to plaintiff is a continuing one.

Certain aspects of the complaint will first be noted. The action is solely against the defendant and does not include the directors and officers of defendant. The injuries of which plaintiff complains, unless we except plaintiff's claim as to the dilution of his stock, consist entirely of injuries to the corporation and its stockholders as a class. Any injury which plaintiff may receive by reason of the dilution of his stock would be equally applicable to all the stockholders of defendant, since plaintiff holds such a small amount of stock in proportion

to the amount of stock outstanding that the control or management of defendant would not be affected by the granting of these options, and, further, since there is no averment that the pre-emptive rights of plaintiff as a stockholder are affected by their issuance.

Rule 23(b) of this court provides, in substance, that in any action which may be brought by a stockholder to enforce a secondary right in a corporation it shall be averred in the complaint that the plaintiff was a stockholder at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law. It is further provided therein that the complaint shall set forth with particularity the efforts of plaintiff to secure from the managing directors, and, if necessary, from the shareholders, such action as he desires and his reasons for his failure to obtain such action or for not making such effort.

Plaintiff claims that the value of his stock will deteriorate and that his proportionate share of the stock will be decreased as a result of the granting and exercise of the stock options. Assuming plaintiff's contention is correct, this would apply to the stock of all other stockholders as well. There are cases, of course, in which there is injury to the corporation and also special injury to the individual stockholder. In such case a stockholder, if he should so desire, may proceed on his claim for the protection of his individual rights rather than in the right of the corporation. The action would then not constitute a derivative action. *Witherbee v. Bowles,* 201 *N.Y.* 427, 95 *N.E.* 27; *Stinnett v. Paramount-Famous Lasky Corp., (Tex.Com.App.)* 37 *S.W.2d* 145; *Hammer v. Werner,* 239 *App.Div.* 38, 265 *N.Y.S.* 172, 179. See *Fletcher, Cyclopedia Corporations, (Perm.Ed.) Vol.* 13, § 5921, *p.* 281. Under such circumstances, *Rule* 23(b) would not apply. Here the wrong of which plaintiff complains is not a wrong inflicted upon him alone or a wrong affecting any particular right which he is asserting—such as his pre-emptive rights as a stockholder, rights involving the control of the corporation, or a wrong affecting the stockholders and not the corporation—but is an indirect injury as a result of the wrong done to the corporation. *Bennett v. Breuil Petroleum Corp.,* — *Del.Ch.* —, 99 *A.2d* 236, opinion of Chancellor Seitz dated August 11, 1953; *Ainscow v.*

*Sanitary Co. of America,* 21 *Del.Ch.* 35, 180 *A.* 614; *Miller v. Loft, Inc.,* 17 *Del.Ch.* 301, 153 *A.* 861; *Sohland v. Baker,* 15 *Del.Ch.* 431, 141 *A.* 277, 58 *A.L.R.* 693; *Fleer v. Frank H. Fleer Corporation,* 14 *Del.Ch.* 277, 125 *A.* 411; *Wyles v. Campbell,* (*D.C.Del.*1948), 77 *F.Supp.* 343.

Plaintiff distinguishes the cases above cited from the present case on the ground that they are actions for the cancellation of stock which has already been issued, whereas in the present case the prayer is to enjoin the defendant from issuing stock under the option plan as well as to compel the defendant to take proper action relative to the stock which has already been issued under these options. I fail to see that there is any difference between the type of action in a suit to cancel shares of stock already issued and one where the prayer is to enjoin the issuance of stock under a contract made by the corporation. In each case the wrong for which complaint is made is the action of the corporation in entering into the contract. See *Gottlieb v. Heyden Chemical Corp.,* — *Del.Ch.* —, 90 *A.2d* 660; *Levitan v. Stout,* (*D.C.W.D.Ky.*) 97 *F.Supp.* 105; *Pergament v. Frazer,* (*D.C.E.D.Mich*) 93 *F.Supp.* 9. While it is true that in the cases cited the prayer is for the cancellation of stock already issued and in the present case the prayer is for the cancellation of the option contract, the purpose is the same. Plaintiff claims that the options granted under the option contract have substantial value; there is no contention, as I understand plaintiff's complaint, that there is waste as far as the value of the stock as set forth in the option contracts relates to the actual value thereof. The loss in each instance is a loss to the corporation and to the stockholders as a whole. The fact that plaintiff has chosen to sue the corporation alone and not to include as parties defendant the managing directors and optionees does not in any manner change the nature of the cause of action or the substance of plaintiff's claim. See *Selman v. Allen,* (*Sup.*) 121 *N.Y.S.2d* 142.

The case of *Rosenthal v. Burry Biscuit Corporation,* 30 *Del.Ch.* 299, 60 *A.2d* 106, in which the action was brought for a declaration that stock options issued under an option contract were invalid, is very similar to the present case. While it is true that in that case the

question was not specifically discussed, it is at least significant that Chancellor Seitz in his opinion denoted the action as a derivative one.

Plaintiff relies upon the case of *Horwitz v. Balaban, (D.C.S.D. N.Y.)* 112 *F.Supp.* 99, and other New York cases. In that case the court held that the charter of the corporation purported to take away stockholders' pre-emptive rights as recognized in the New York cases. The *Balaban* case and the other New York cases upon which plaintiff relies is distinguished in the case of *Selman v. Allen, supra* [121 *N.Y.S.2d* 146]. In the latter case a stockholder alleged that the corporation, without consideration and solely by way of gift, granted to certain of the directors an option to purchase a large number of shares of the common stock of the corporation. The prayer was that the individual defendants be enjoined from issuing stock of the corporation to the optionees. The court held that this was an action "in the right of the corporation", saying that the wrong complained of was clearly a claim of waste and mismanagement of corporation assets, to be redressed by means of a suit by or on behalf of the corporation. The court went on to distinguish the cases relied upon by plaintiff by saying that those actions were brought to vindicate purely personal rights of stockholders to maintain their relative positions by being accorded their personal rights to acquire new stock to be issued. The court distinguished the *Balaban* case in particular by saying that in the latter case the shares involved were unissued shares, whereas in the *Selman* case the stock was stock of the corporation. Noting that plaintiff had made a studied attempt to show that her action was not instituted or maintained in the right of the corporation, the court said:

"I think it obvious, however, that if plaintiff be in truth complaining of and seeking to enjoin a wrong to the corporation, she can neither change the nature of the wrong nor avoid the operation and effect of § 61(b) by asserting in her complaint that she is not suing in the right of the corporation. The nature of the wrong alleged is what controls, not the pleader's assertion of an intention to sue as representative of the stockholders rather than in the right of the corporation; and as I find that the wrong here claimed is a wrong to the corporation, and not a wrong to the

stockholders personally or individually, I conclude that this action is brought in the right of the corporation * * *."

It is true that in the present case the stock involved is unissued shares. Under the law of the State of New York, as set forth in the cases cited by plaintiff, the issuance of such shares under such conditions would be a violation of the stockholders' pre-emptive rights. In this case, there is no contention that the pre-emptive rights of stockholders are violated. Disregarding the question of pre-emptive rights, the law, as laid down in the *Selman* case, is that the action is a derivative one.

Plaintiff says that, even if the court should hold that the action is a derivative action, he is entitled to proceed because the wrong complained of is a continuing one. This contention is based upon the assertion that many of the options outstanding have not been exercised and that the damage or injury to plaintiff will not be suffered until the exercise of those options.

The wrong of which plaintiff complains is the option contract, not the purchase price and sale of stock pursuant thereto. See *Gottlieb v. Heyden Chemical Corp., supra; Kerbs v. California Eastern Airways, Del.,* 90 *A.2d* 652, 656; *Rosenthal v. Burry Biscuit Corporation, supra.* Plaintiff does not complain that the sale of the stock at the option prices would constitute a waste of corporate assets; his complaint is lack of consideration in the granting of the options. This question was considered in the case of *Levitan v. Stout, supra* [97 *F.Supp.* 119], a stockholder's derivative action, in which mismanagement of the corporation on the part of the individual defendants was charged. On a motion of the individual defendants to strike certain allegations from the amended complaint on the ground that the allegedly wrongful acts were committed prior to the earliest sale on which any of the plaintiffs had acquired stock in the corporation, the court, in holding that the wrong was not a continuing one, said:

"Assuming that the individual defendants did wrong to the Corporation by entering into the contract it does not follow that they committed any wrong in carrying out the contract once it had been made. Indeed, had they not done so, the Corporation

would presumably have been subject to liability for breach of contract."

See also *Pergament v. Frazer, supra.*

The wrong or injury of which plaintiff complains is the granting of the options, not the exercise thereof. The action is therefore not a continuing one.

I conclude that as to the options granted·in September of 1950, defendant's motion for summary judgment under *Rule* 56 must be granted.

I next consider the applicability of New York statutory law as that law may apply to the stock option plans of defendant.

Defendant contends that since the options were granted and will be exercised, if they should be exercised, in the State of New York, their legality must be determined by the laws of that state. Defendant relies on *Subdivision* 5 *of Section* 33, *Article* 3, *Personal Property Law, Chapter* 41, *McKinney's Consolidated Laws of New York,* which provides as follows:

"5. When hereafter an offer to enter into a contract is made in a writing signed by the offeror, or by his agent, which states that the offer is irrevocable during a period set forth or until a time fixed, the offer shall not be revocable during such period or until such time because of the absence of consideration for the assurance of irrevocability. When such a writing states that the offer is irrevocable but does not state any period or time of irevocability, it shall be construed to state that the offer is irrevocable for a reasonable time."

The New York statute quoted above was passed for the purpose of affording recognition. of an existing and growing custom of business men to make so-called "firm" offers, which are assumed to be binding against the offeror even though he should receive no consideration for his offer. *Jarka Corporation v. Hellenic Lines,* (2 *Cir.,* 1950) 182 *F.2d* 916, 919.

This action was instituted by plaintiff as one of the shareholders of the defendant. It relates to stock options granted to certain officers and personnel of defendant. It is not therefore an ordinary transaction for the sale of stock on the open market, but involves a matter lying entirely within the corporate structure of defendant. The stock certificate of plaintiff was issued in conformity with the laws of the State of Delaware. When the plaintiff became the owner of the corporate stock of defendant, the rights which he obtained by virtue thereof were rights granted to him under the laws of this state. The issuance of the stock option plans by defendant arises out of their approval by its board of directors and its stockholders and the controversy resulting therefrom involves the internal affairs of defendant and is therefore controlled by the laws of the state of its origin, namely, the State of Delaware. *Rogers v. Guaranty Trust Co. of New York,* 288 *U.S.* 123, 53 *S.Ct.* 295, 77 *L.Ed.* 652, 89 *A.L.R.* 720; *Boyette v. Preston Motors Corporation,* 206 *Ala.* 240, 89 *So.* 746, 18 *A.L.R.* 1376.

The case of *Rogers v. Guaranty Trust Co. of New York, supra* [288 *U.S.* 123, 53 *S.Ct.* 296], is in point. In that case The American Tobacco Co., a corporation of the State of New Jersey, doing business in the State of New York, by resolution of its board of directors, advised approval of its stockholders of a plan for the issuance and sale of its common stock B to certain employees and others actively engaged in the conduct of its business "by way of additional compensation for services to be rendered" and allotted for subscription shares of its unissued stock. The plan was duly adopted by the stockholders and the board of directors authorized the sale of the stock. A stockholder's suit to enjoin defendants from carrying out the plan and to cancel the stock was instituted in the District Court for the Southern District of New York. That court, 60 *F.2d* 106, dismissed the complaint without prejudice to the enforcement of the rights of the plaintiff, if any, in the courts of New Jersey. The Circuit Court of Appeals, (2 *Cir.*) 60 *F.2d* 114, held that the stock was lawfully issued under New Jersey statutes. Upon certiorari to the United States Supreme Court, that court remanded the case to the District Court with directions to reinstate its earlier judgment. 287 *U.S.*

586, 53 *S.Ct.* 80, 77 *L.Ed.* 512. In holding that the law of the State of New Jersey applied, the Supreme Court, Mr. Justice Butler, said:

> "The authorization, allotment, and sale of the shares in question involved the proportionate ownership of stockholders and their rights inter sese. Unquestionably the steps taken and proposed to formulate and carry out the plan constitute the conduct and management of the internal affairs of the tobacco company. The controversy is solely between the plaintiff and other stockholders not participating in the distribution on one side and the purchasers of the new stock, the corporation, its directors and officers on the other. When, by acquisition of his stock, plaintiff became a member of the corporation he, like every other shareholder, impliedly agreed that, in respect of its internal affairs, the company was to be governed by the laws of the state in which it was organized. His rights, whatever the tribunal chosen for their vindication, are to be determined upon the ascertainment and proper application of New Jersey law."

Even assuming that the stock options issued in this case are to be determined under the laws of the State of New York, I find nothing in that statute, or in any other law or decision of that state which has come to my attention, permitting a corporation to give away its assets, or any substantial portion thereof, without the consent of all its stockholders. See *Holst v. New York Stock Exchange,* 252 *App.Div.* 233, 299 *N.Y.S.* 255; *Selman v. Allen, supra.*

The New York statute cited by defendant relates to the revocability of an otherwise valid offer; it cannot possibly validate an option which would be otherwise illegal. It is charged in plaintiff's complaint that the defendant, by the granting of the options, is giving away a substantial portion of its assets without receiving proper consideration therefor and without the unanimous approval of all its stockholders. This it cannot do, either in New York or in this state. As the record now stands, there is an allegation in the complaint alleging waste of corporate assets by reason of the issuance of these options. The question of the sufficiency of this allegation must necessarily be determined by the trier of the facts as well as the law.

I conclude that defendant's motion for summary judgment, pursuant to *Rule* 56, as far as that motion has any applicability to the New York law, should be dismissed.

It is asserted on behalf of defendant that the facts alleged in the complaint do not show irreparable injury to the plaintiff and that the only loss which plaintiff has sustained is a monetary one, for which he can secure full and complete relief in a court of law.

Equity generally has jurisdiction in a suit for injunction to restrain a threatened injury. In this case the remedy at law, if there should be one, would undoubtedly be less complete and less effective than in a court of equity. The stock option plans of defendant apply to several hundred of its officers and employees, and involve 248,000 shares of its stock. Few, if any, of these officers and employees reside in this state. The amount of damages would be difficult, if not impossible, of ascertainment. The complaint alleges that the options have substantial value. Nevertheless, that value cannot be intelligently determined in dollars and cents from the point of view of either the defendant or the optionees. See *Kaufman v. Shoenberg*, — Del.Ch. —, 91 *A.2d* 786; *Gottlieb v. Heyden Chemical Corp.*, — Del.Ch. —, 99 *A.2d* 507 opinion of Chancellor Seitz dated October 8, 1953. A remedy at law must be as practical to the ends of justice and to its prompt administration as the remedy in equity. *City of Walla Walla v. Walla Walla Water Co.*, 172 *U.S.* 1, 19 *S.Ct.* 77, 43 *L.Ed.* 341. Injunctions relative to option contracts under similar circumstances have been granted by this court in a number of instances. I therefore conclude that plaintiff has shown such evidence of irrevocable injury as will prevent judgment against him on motions to dismiss and for summary judgment.

An order will be signed, on notice, in accordance with this opinion.