17 F.3d 600
 In re IONOSPHERE CLUBS, INC., Eastern Air Lines, Inc., Bar
Harbor Airways, Inc., Debtors.
Frank SOBCHACK, Frank Kenneth Sobchack, Rhett G. Cooper,
Jr., Annie Cooper, and Official Committee of
Preferred Shareholders of Eastern Air
Lines, Inc., Appellants,
v.
AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO, Mary
Grace Shore, as assignees of the Eastern Estate,
Martin R. Shugrue, Jr., As Chapter 11
Trustee of the Eastern Estate,
Appellees.
 Nos. 1018, 1019, Dockets 93-5079, 93-5081.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 28, 1994.
Decided March 1, 1994.
 
 Martin S. Siegel, New York, N.Y. (Berlack, Israels & Liberman, New York, N.Y.), for appellant The Official Committee of Preferred Shareholders of Eastern Air Lines, Inc.
 Arthur Abbey, New York, N.Y. (Jill S. Abrams, Abbey & Ellis, New York, N.Y.), for appellants Frank Sobchack, Frank Kenneth Sobchack, Rhett G. Cooper, Jr. and Annie Cooper.
 Adam C. Harris, New York, N.Y. (O'Melveny & Myers, New York, N.Y.), for appellees American National Bank and Trust Company of Chicago and Mary Grace Shore, as Assignees of the Eastern Estate.
 Daniel J. King, New York, N.Y. (King & Spalding, on the brief), for appellee Martin R. Shugrue, Jr., as Chapter 11 Trustee of the Eastern Estate.
 Before: PRATT, WALKER, and LEVAL, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 This appeal arises out of the administration of the bankruptcy estate of Eastern Airlines, Inc. ("Eastern") in the United States Bankruptcy Court for the Southern District of New York. The appeal involves the question whether the bankruptcy court, Burton R. Lifland, J., acted in accordance with law in enjoining the holders of Eastern preferred stock from bringing claims based on breach of fiduciary duty and tortious interference with contract (the "Proposed Claims") against former officers and directors (the "Proposed Defendants"). This turns on whether, as a matter of Delaware law, the Proposed Claims are derivative claims belonging to the corporation or direct claims of the shareholders. In ruling on a proposed settlement made among the Eastern Estate, the Proposed Defendants, and several other parties, the bankruptcy court found that the Proposed Claims were derivative, that they were the property of the Eastern Estate, and were therefore extinguished when settled by the Eastern Estate. The court enjoined any person (including the preferred stockholders) from commencing, pursuing or prosecuting "any action or claim which is property of the Eastern Estate and which is settled and extinguished pursuant to the Settlement Agreement...." Order Authorizing and Approving Settlement Agreement, Oct. 1, 1992, at 16. The preferred stockholders (hereinafter "Preferredholders"), whose interests are represented by the Official Committee of Preferred Shareholders (appointed by the bankruptcy court) (the "Preferred Committee") and by certain individual holders proposing to act as class action representatives, contend that the Proposed Claims are direct and not derivative under the controlling Delaware law, and that the bankruptcy court erred, exceeded its power, and deprived them of their constitutional rights in extinguishing the claims and barring them from bringing suit.
 
 Background
 
 2
 On March 9, 1989, Eastern Airlines filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sec. 101 et seq., and was authorized by the bankruptcy court to operate as a debtor in possession. For approximately three years, Eastern and Continental Airlines had been jointly owned by Texas Air,[1] in a corporate structure controlled by Frank Lorenzo. Shortly after Eastern's Chapter 11 filing, interested parties moved for the appointment of a trustee, alleging that Eastern's management had serious conflicts of interest arising from its domination by Texas Air and Lorenzo. The motion further alleged that Eastern's conflicted management had caused it to engage in a series of transactions with its affiliates (the "Intercorporate Transactions") through which it had transferred many valuable assets to Continental (and other affiliated entities) for inadequate consideration. On April 5, 1989, the court denied the motion for appointment of a trustee, but appointed an Examiner to investigate these allegations.
 
 
 3
 The Examiner, whose investigation lasted approximately one year, concluded that many of the Intercorporate Transactions could indeed form the basis of claims by the Eastern Estate. (It is not disputed that the Intercorporate Transactions seriously harmed Eastern.) The bankruptcy court appointed a Trustee in April, 1990.
 
 
 4
 On January 8, 1991, the bankruptcy court assigned Eastern's claims arising out of the Intercorporate Transactions to interested parties (the "Assignees") for prosecution on behalf of the Estate. Negotiations commenced among Eastern (represented by the Trustee, the Assignees, and Eastern's Unsecured Creditors Committee), the family of Texas Air affiliates including Continental, the Proposed Defendants (to the Preferredholders' Proposed Claims), and various other parties. The Preferred Committee was originally among the parties assigned to prosecute Eastern's claims; on March 6, 1992, however, the Preferred Committee withdrew from the assignment, contending that it was not being consulted by the other Assignees. In early 1992, several of the Preferredholders had made it known that they intended to initiate class action litigation against the Proposed Defendants asserting individual, nonderivative actions arising out of the Intercorporate Transactions.
 
 
 5
 In the meantime, Continental Airlines had entered the protection of the United States Bankruptcy Court for the District of Delaware. On June 4, 1992, on the application of Continental and Texas Air, the Continental bankruptcy court preliminarily enjoined the Eastern Preferredholders from bringing any such action pending the conclusion of the settlement negotiations. The Delaware preliminary injunction was entered over opposition submitted by the Preferredholders.
 
 
 6
 On July 2, 1992, the parties to the Eastern settlement negotiations entered into a proposed settlement (the "Settlement Agreement") and sought the approval of Bankruptcy Judge Lifland for the compromise of Eastern's claims. The Settlement Agreement provides, inter alia, for payment of consideration to the Eastern Estate and its release of all claims against the settling parties. In paragraph 13, it states that any claim against any signatory "which is predicated upon damage to Eastern ... that arises from or relates to ... the Intercorporate Transactions (including without limitation the Preferred Derivative Claims) ... shall be extinguished...." Under the Bankruptcy Code's priority structure, the monies to be paid to Eastern under the agreement will not suffice to provide any recovery either for the Preferredholders or for the holders of $328 million of Eastern's subordinated debt.
 
 
 7
 On July 15, 1992, the bankruptcy court's order-to-show-cause was served on the Preferredholders advising them that the Settlement Agreement would be presented for authorization and approval and that objections should be submitted in writing. The Preferred Committee and the representative Preferredholders submitted written objections and memoranda (including a copy of their Delaware submission opposing the injunction). Their submissions argued that their Proposed Claims were direct and not derivative and, therefore, could not be extinguished by the settlement in which they had not participated and did not join.
 
 
 8
 Judge Lifland held hearings on the Preferredholders' objections to the settlement, and approved the settlement in its entirety. His October 1, 1992 "Order Authorizing and Approving Settlement Agreement" provided that the causes of action
 
 
 9
 set forth in the Preferred Stockholders' Pleadings and the Preferred Stockholders' Objections, are causes of action which are property of the Eastern Estate and which only the Eastern Estate has standing to pursue. The Settlement Agreement extinguishes these causes of action in that they are property of the Eastern Estate arising out of or relating to the Intercorporate Transactions.[2]
 
 
 10
 Id. at p 19. The order went on to provide in decretal p D that
 
 
 11
 D. The Settlement Agreement shall be binding in all respects upon all creditors and equity security holders of Eastern, as well as all other parties in interest in the Eastern case, and no "person" ... may commence, pursue or prosecute any action or claim which is property of the Eastern Estate and which is settled and extinguished pursuant to the Settlement Agreement, including but not limited to any action or claim which is property of the Eastern Estate and arises out of or relates to the Intercorporate Transactions.
 
 
 12
 The Preferredholders appealed to the district court, contending that under Delaware law their Proposed Claims were not derivative but direct, and that Judge Lifland therefore erred in ruling that they were extinguished by the Settlement Agreement. The district court, Robert W. Sweet, J., upheld the bankruptcy court's determination that the claims asserted by the Preferredholders were derivative, and thus could be prosecuted, or settled, only in the name of the Eastern Estate. This appeal followed.
 
 Discussion
 
 13
 I. Whether the Proposed Claims are Derivative or Direct
 
 
 14
 We agree with the well-reasoned conclusions reached by Judges Sweet and Lifland that the claims submitted by the Preferredholders to the bankruptcy court are derivative under Delaware law (which the parties agree is governing). They therefore belong exclusively to the Eastern Estate and were extinguished by its settlement of those claims. In re Ionosphere Clubs, Inc., Nos. 89 B 10448, 89 B 10449, 91 B 10287 (Bankr.S.D.N.Y. Oct. 1, 1992); In re Ionosphere Clubs, Inc., 156 B.R. 414, 438-39 (S.D.N.Y.1993).
 
 
 15
 Starting from the proposition that a shareholder asserting a direct action against a third party must allege "special injury," Elster v. American Airlines, Inc., 34 Del.Ch. 94, 100 A.2d 219, 222 (1953), the Delaware courts have several times undertaken to describe how to distinguish between shareholders' direct and derivative actions. See, e.g., Lewis v. Spencer, 577 A.2d 753 (Del.1990), No. 8651, 1990 WL 72615, * 1-2, 1990 Del. LEXIS 154, * 3 (Del. May 11, 1990) (text in Lexis); Lipton v. News Int'l, PLC, 514 A.2d 1075, 1078 (Del.1986); Moran v. Household Int'l, Inc., 490 A.2d 1059, 1069-70 (Del.Ch.), aff'd, 500 A.2d 1346 (Del.1985). How the language of these opinions bears on the facts of a new case is not always clear.
 
 
 16
 In their Objections filed with the bankruptcy court, the Preferredholders described their claims as contractual entitlements that Eastern was rendered unable to perform because it was made insolvent by the Intercorporate Transactions. They contend the Proposed Defendants are liable because, in violation of their fiduciary duties to Eastern and in tortious interference with the Preferredholders' contractual rights, they caused Eastern to enter into the Intercorporate Transactions.
 
 
 17
 The Preferredholders contend the Proposed Claims come within the language of the Delaware Chancery Court's Moran opinion, subsequently repeated by the Delaware Supreme Court in Lipton and in Lewis. In Moran, the Chancery Court stated:
 
 
 18
 To set out an individual action, the plaintiff must allege either an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation.
 
 
 19
 Moran, 490 A.2d at 1069 (citations omitted). The Preferredholders contend they come within both branches of this test.
 
 
 20
 As to the first branch, the Preferredholders contend that because Eastern's sole common shareholder was Texas Air and the wrongful diversion of Eastern's assets was in favor of other Texas Air affiliates, Eastern's common shareholder suffered no injury through the Intercorporate Transactions; it merely transferred its property from one pocket into another. The Preferredholders allege that the injury to them is thus "separate and distinct" from that suffered by Texas Air, the common shareholder. Moran, 490 A.2d at 1069.
 
 
 21
 Although ingenious, this argument was correctly rejected below. Under Delaware law, the inquiry is whether the other shareholders suffered the same injury in their role as shareholders. See Weinberger v. Lorenzo, No. 10692, 1990 WL 156529, 1990 Del.Ch. LEXIS 169 (Del.Ch. Oct. 11, 1990); In re Tri-Star Pictures, Inc. Litig., No. 9477, 1989 WL 112740, 1990 Del.Ch. LEXIS 80 (Del.Ch. June 14, 1990). See also Davis v. United States Gypsum Co., 451 F.2d 659 (3d Cir.1971). In its role as the common shareholder of Eastern, Texas Air suffered the same type of injury as the Preferredholders from the diversion of Eastern's assets to other corporations, even though in another role, it may have recouped the injuries. Thus, the Preferredholders did not suffer an injury that was separate and distinct from that suffered by Eastern's common stockholder.[3] Judges Sweet and Lifland correctly rejected this argument.
 
 
 22
 As to the second branch of the Moran test, the Preferredholders ask us to compare the chancery court's words to their situation, literally, without reference to the meaning or purpose of the doctrines involved.[4] They contend that they meet this test because the failure to pay the preferred dividends and make sinking fund payments, as required in Eastern's corporate charter, is "a wrong involving a contractual right of a shareholder" that "exists independently of any right of the corporation." Moran, 490 A.2d at 1069. We reject their contention for two reasons. First, cursory consideration of the purposes of direct and derivative actions demonstrates that it would make no sense to adopt their interpretation. Second, a recent reiteration of the test by the Delaware Supreme Court clearly excludes the Proposed Claims from the scope of direct actions.
 
 
 23
 The distinction between derivative and direct claims turns primarily on whether the breach of duty is to the corporation or to the shareholder(s) and whether it is the corporation or the shareholder(s) that should appropriately receive relief.
 
 
 24
 In some cases, where a wrong has been committed by a third party against a corporation, shareholder intervention is necessary to cause the corporation to sue for rectification of the wrong. The classic case occurs where officers or directors of the corporation appropriate for themselves (or their friends) an opportunity of the corporation, or embezzle its funds. Because the managers of the corporation responsible for causing it to bring suit are the very ones who wrongfully took from the corporation, shareholder initiative is likely to be necessary to cause suit to be brought. Such an action brought by the shareholder is derivative; it is brought in the name of the corporation for the benefit of the corporation--not for the shareholder's direct benefit. Return of the stolen funds to the corporation would rectify the injury; payment of damages directly to the plaintiff-stockholders for the diminution in the value of their stock would be inappropriate.
 
 
 25
 Where the wrong committed by a third party consists of an injury inflicted on stockholders' rights rather than upon the corporation, the stockholders' action seeks relief awarded directly in their favor against the third party. A direct action would lie where third parties contrived to destroy or circumvent the participatory or commercial rights of certain stockholders in a manner that does no injury to the corporation, as where directors contrived to exclude certain stockholders from voting, or from participating in an advantageous offer. See, e.g., Rabkin v. Philip A. Hunt Chemical Corp., 547 A.2d 963, 969 (Del.Ch.1986) (citing R. Franklin Balotti and Jesse A. Finkelstein, The Delaware Law of Corporations and Business Organizations, Sec. 13.6, for proposition that direct claims lie where a proposed merger or other transaction unfairly affects minority shareholders). In such a case, the wrong can be rectified only by relief to that class of stockholder; because the corporation has not been injured, relief to the corporation would not cure the wrong.[5]
 
 
 26
 The Proposed Claims are very similar to the classic derivative action described above. The alleged wrongs of the Proposed Defendants consisted of the diversion of Eastern's assets. The only significant difference is that here the diversion of assets by the insiders was so extreme that the corporation was left bankrupt and unable to fulfil its contractual obligations, including the obligations to the Preferredholders. That difference, however, does not justify an action seeking payment directly to the Preferredholders. To the contrary, it provides additional reason why the recovery must be to the corporation rather than to the Preferredholders. Eastern is in bankruptcy, and the law provides for a strict order of priorities for the distribution of its assets. If the Proposed Defendants were to pay damages directly to the Preferredholders rather than to Eastern's Estate, the Preferredholders would receive compensation for their foregone dividends while claimants senior in priority to them went unpaid, thus defeating the bankruptcy code's system of priorities. On the other hand, a complete recovery by the corporation would rectify the injury suffered by the Preferredholders; were Eastern to recover the diverted funds and thus be restored to financial health, it would then be able to fulfill its contractual obligations to the Preferredholders.
 
 
 27
 The Delaware Supreme Court's most recent articulation of the distinction between derivative and direct actions, in Lewis v. Spencer, 577 A.2d 753 (Del.1990), No. 8651, 1990 WL 72615, 1990 Del. LEXIS 154 (Del. May 11, 1990) (text in Lexis), clarifies the test earlier stated in Moran. In explaining "special injury" in the sentences which immediately precede and follow its quotation of the Moran test, the Lewis opinion states: "To have standing to sue individually, rather than derivatively on behalf of the corporation, a plaintiff must allege more than an injury resulting from a wrong to the corporation.... For a plaintiff to have standing to bring an individual action, he must be injured directly or independently of the corporation." Id. at * 4 (citations omitted). These words reaffirm the admonition of the chancery court in Elster, 100 A.2d at 222, that a special injury justifying a direct action could not be "an indirect injury as a result of the wrong done to the corporation."
 
 
 28
 The Proposed Claims do not meet this test. The injury to the Preferredholders' contractual rights to receive dividend and sinking fund payments was not inflicted "directly" or "independently of the corporation." Their Proposed Claims result from injuries inflicted by the Proposed Defendants upon Eastern; the injuries to the contract rights of the Preferredholders occurred only as an indirect consequence of those wrongs against Eastern.[6]
 
 
 29
 We therefore agree with Judges Sweet and Lifland that the Preferredholders' Proposed Claims are derivative claims that are the property of the Eastern Estate. It necessarily follows that those claims were extinguished when settled and the Eastern Estate.
 
 II. Potentially Nonderivative Claims
 
 30
 During oral argument, the Preferredholders contended that their Proposed Claims included the claim that the Proposed Defendants, prior to Eastern's entry into bankruptcy, during a time when Eastern was still financially able to make its contractually required payments, wrongfully contrived to cause Eastern not to pay them. The Preferredholders contend that this allegation gives rise to a direct cause of action, even if the claims discussed above are derivative. They contend that the bankruptcy judge's order approving the Settlement and enjoining the Preferredholders from suing must be vacated because it wrongly extinguished and enjoined these direct, nonderivative claims.
 
 
 31
 This claim was not one of the Proposed Claims submitted to Judge Lifland; nor was it argued to Judge Sweet. The Preferredholders have not directed our attention to any pleading or memorandum submitted below that makes this claim. In fact, during the oral argument of the appeal in the district court, Judge Sweet expressly asked whether the Preferredholders were making a claim of this nature. Counsel for the Appellees said no, explaining that the only claim was that the Preferredholders were injured as a consequence of the wrongs inflicted on Eastern through the Intercorporate Transactions. Counsel for the Preferredholders did not contend otherwise. See Tr. at 15. In the papers submitted to us as the record on appeal (as well as in the briefs submitted to this court), the Preferredholders have consistently described their injury as a consequence of the wrongs committed against Eastern through the Intercorporate Transactions.
 
 
 32
 We therefore express no opinion whether such a claim constitutes a direct cause of action, or whether such a claim is barred by the rulings below. Those contentions are not before us on this appeal.
 
 III. Other Contentions
 
 33
 We find no merit in the Preferredholders' other contentions, including their argument that they suffered a deprivation of due process through the procedures followed in the bankruptcy court. Notwithstanding the Continental bankruptcy court's preliminary injunction against bringing suits, the Preferredholders were not denied the opportunity to specify their claims with precision in the Eastern bankruptcy court below. The Delaware injunction did not bar them from submitting to Judge Lifland a detailed description of their claims, or a sample complaint.
 
 
 34
 The bankruptcy court administering the Eastern Estate possessed the constitutional authority to decide whether their Proposed Claims belonged to Eastern or to the Preferredholders. Bankruptcy courts have long been charged with ascertaining, under state law, whether claims belong to the bankruptcy estate or to other claimants. See, e.g., Kalb, Voorhis & Co. v. American Fin. Corp., 8 F.3d 130, 132 (2d Cir.1993); St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc., 884 F.2d 688, 700-01 (2d Cir.1989). Because their Proposed Claims were correctly adjudged to be the property of Eastern, the Preferredholders have no constitutional right to bring such claims.
 
 Conclusion
 
 35
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Texas Air has since changed its name to Continental Airlines Holdings, Inc
 
 
 [2]
 At the oral argument before the bankruptcy court, Judge Lifland noted that although the settlement correctly characterized certain claims as derivative, nothing in the settlement "prevent[s] somebody from sitting down and working up another set of papers that clearly sets forth a cause of action that is an individual nonderivative one." Tr. at 219. Judge Sweet reiterated this point in his affirmance. See In re Ionosphere Clubs, Inc., 156 B.R. 414, 441 (S.D.N.Y.1993)
 
 
 [3]
 The Delaware Chancery Court in Weinberger found the action derivative where the plaintiff, a preferredholder, sought to apply a closely related theory to these very facts. In rejecting the plaintiff's direct-action theory, the court wrote:
 [T]here are no allegations that any class or group of Eastern stockholders are being directly singled out and treated disparately. The Eastern preferred shareholders have not been singled out and treated differently than other Eastern shareholders. The essence of Weinberger's claim is that the value of his stock has been reduced due to defendant having caused Eastern's management to deplete or destroy Eastern's corporate assets. Such alleged mismanagement, in fact, reduces the value of Eastern's stock in toto regardless of Weinberger's contention that Texas Air (Eastern's common stockholder) suffers no real injury by shifting its own assets.
 Weinberger, 1990 WL 156529 at * 3, 1990 Del.Ch. LEXIS 169 at * 8-* 9.
 
 
 [4]
 Perhaps aware of the danger of an overliteral interpretation of the prongs of Moran, the Delaware Supreme Court later pointed out that:
 [W]hile Moran serves as a quite useful guide, the case should not be construed as establishing the only test for determining whether a claim is derivative or individual in nature. Rather, as was established in Elster, we must look ultimately to whether the plaintiff has alleged "special" injury, in whatever form.
 Lipton, 514 A.2d at 1078.
 
 
 [5]
 Compare American Law Institute, Principles of Corporate Governance: Analysis and Recommendations, (prepublication ed. 1993). Sec. 7.01 provides that
 An action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action. (b) A direct action may be brought in the name and right of a holder to redress an injury sustained by, or enforce a duty owed to, a holder. An action in which the holder can prevail without showing an injury or breach to the corporation may be maintained by the holder in an individual capacity.
 In the notes following section 7.01, the ALI notes that "a wrongful act that depletes corporate assets and thereby injures shareholders only indirectly, by reason of the prior injury to the corporation, should be seen as derivative in character; conversely, a wrongful act that is separate and distinct from any corporate injury, such as one that denies or interferes with the rightful incidents of share ownership, gives rise to a direct action." Id. at 17.
 
 
 [6]
 The Preferredholders point to language in Lipton stating that both direct and derivative actions can arise from the same wrong. This does not advance their case. Having alleged only "an injury resulting from a wrong to the corporation" Lewis, at * 4, they have not alleged the type of injury that will support a direct action