Philip A. BURGHART, Plaintiff,

v.

Ralph LANDAU, Jon Rehnberg, Robert Malpas, Edward Muller, Halcon International, Inc., Oxichem Partnership, Halcon Research & Development Partnership, Halcon SD Group, Inc., Arell Corporation, Claire Landau, and Metta Rehnberg and Citibank, N.A., as Executors and Trustees under the Will of Harry A. Rehnberg, Defendants.

No. 82 Civ. 2181 (MJL).

United States District Court,
S.D. New York.

April 30, 1993.

Richard deY. Manning, New York City, for plaintiff.

Paul Weiss Rifkind Wharton & Garrison by Douglas M. McKeige, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

### BACKGROUND

Before this Court is defendants' motion for summary judgment on the two remaining claims of plaintiff's Second Amended Complaint. This Court has issued five previous opinions in this case and will therefore limit a recital of the facts to those relevant to the decision herein.[1]

In March 1978 Archon Enterprises Inc. and its wholly owned subsidiary Halcon International, Inc. merged. Each share of Archon Class A stock was exchanged for a share of Class C stock in the new entity which retained the name Halcon International, Inc. ("Halcon"). As part of the merger, the board of directors adopted a restructuring plan. Part of the plan included a tender offer for the purchase of the newly issued Class C shares at $100 per share.[2] An Executive Compensation Plan ("Compensation Plan") was also adopted in connection with the tender offer.[3] The Compensation Plan provided that all holders of Class C shares who accepted the tender offer would receive a number of "participation units" equal to the number of Class C shares purchased. Compensation Plan participants were to receive annual cash distributions at least equal to the amount of cash dividends they would have received had they retained their Class C stock.

Plaintiff, an employee-stockholder whose Class A shares were exchanged for Class C shares, did not accept the tender offer and therefore was not a participant in the Compensation Plan. Shareholders who did not accept the tender offer were informed:

> In the event of the liquidation, dissolution or winding up of the company, the holders of [Class C] Common Stock are entitled to share ratably in the assets of the Company legally available for distribution to stockholders of the Company.[4]

In June 1980, Halcon sold its interest in a company known as the Oxirane Group for $286 million. Halcon informed its shareholders in April 1981 that for tax purposes Halcon would be liquidated prior to June 1981.[5] Prior to Halcon's liquidation, the board of directors approved payment of approximately 38.5 million in bonuses to certain key executives.[6] After payment of these bonuses, the liquidating Trust paid to each Class C shareholder $237.05 per share. The shareholders also received *pro rata* joint ownership interests in the remaining businesses of Halcon, which were reorganized into new entities: The Halcon SD Group, Inc. ("Halcon SD") (a new corporation into which six former wholly owned subsidiaries were merged); Halcon Research and Development Partnership ("Halcon R & D"); Oxiteno Partnership; and a liquidating trust required by Delaware law.

In August 1982 two of the new entities—Halcon SD and Halcon R & D—were sold for over $43 million. The board of directors again approved the payment of bonuses and distributed the balance, *pro rata,* to the shareholders, including plaintiff.

Claim Three of plaintiff's complaint alleges, in connection with the 1981 liquidation,

---

1. Plaintiff failed to submit a 3(g) statement in response to defendant's motion. This Court therefore takes the facts as stated in defendants' 3(g) statement as uncontested. Civ.R. 3(g), Joint Rules for the Southern and Eastern Districts of New York.

2. The offer did not include the shares owned by the controlling stockholders who are defendants here (Landau and the Rehnberg interests).

3. The offering memorandum stated:
   As has always been the Company's policy, the Company fully intends to provide its key employees with the fruits of their labor. As the

Company's fortunes grow, so should the benefits enjoyed by those who are responsible for that growth.
Landau Aff. [July 1982] Ex. D, Plan of Reorganization at 3–4.

4. Landau Aff. [July 1982] Ex. D, Plan of Reorganization at 24.

5. Landau Aff. [Nov.1982] Ex. L.

6. Landau Aff. [Nov.1982] at 8.

that Halcon had no legal obligation to make any distribution of assets to any person or entity other than creditors and stockholders. The distributions to key executives, he alleges, resulted in a reduction of the amount of money to which plaintiff was entitled as a stockholder. Plaintiff requests compensatory and punitive damages for the alleged breach of fiduciary duty.

Claim Four of plaintiff's complaint alleges, in connection with the August 1982 sale, that the distribution of bonuses to key executives deprived plaintiff of a ratable distribution. Plaintiff alleges that because the remaining companies are closely held legal entities, he has no adequate means of determining valuation. He requests a judgment ordering a ratable distribution of those assets in the form as they existed prior to their creation.[7]

In an Opinion and Order dated August 9, 1989, this Court denied plaintiff's motion for summary judgment on Claims Three and Four. After a more detailed analysis of plaintiff's complaint, this Court at the conclusion of an Opinion and Order dated April 24, 1991 invited defendants to renew their motion for summary judgment. Defendants complied. Plaintiff declined to respond and instead submitted a document entitled "Plaintiff's Response to Defendants' 'Renewal, After Discovery of the Motion to Dismiss Plaintiff's Third and Fourth Claims.'" Plaintiff also submitted a "Suggestion of Recusal" directed at this Court. The Court will not address in this Opinion and Order the Suggestion of Recusal, except to say that the suggestion is declined for the reasons stated in defendants' Reply Memorandum and Supplemental Appendix in Opposition, which the Court hereby adopts.

## DISCUSSION

Claims Three and Four are brought under the diversity jurisdiction of this Court. Ar-

chon and Halcon were incorporated in the State of Delaware. Plaintiff's claims are alleged as direct, not derivative, actions against Halcon and its former directors.

### A. Applicable Law and Derivative versus Direct Actions

■ In order to decide the law applicable to the claims alleged, this Court must first apply the choice of law rules of the forum state to determine what laws govern the instant action. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Galef v. Alexander*, 615 F.2d 51 (2d Cir.1980). New York courts would look to the laws of the state of incorporation, Delaware, not only to determine the right of plaintiff to bring the instant claims but also as the source of law concerning the governance of the corporations' internal affairs. *Galef*, 615 F.2d at 58.

■ Delaware courts look not to a plaintiff's characterization of the wrong alleged but to the substance of the claim to determine the nature of the action. *Lipton v. News Int'l PLC*, 514 A.2d 1075 (Del.1986). The Delaware Supreme Court held in *Bokat v. Getty Oil Co.*, 262 A.2d 246 (Del.1970) that when an action alleges injury to the value of corporate stock such that the injury falls equally upon all stockholders, an individual stockholder may not seek recovery for his personal loss but must sue derivatively on behalf of the corporation. The court in *Kramer v. Western Pac. Indus.*, 546 A.2d 348 (Del.1988), quoting *Bokat*, explained:

Delaware courts have long recognized that actions charging "mismanagement which depress[ ] the value of stock [allege] a wrong to the corporation; *i.e.*, the stock-

---

**7.** As defendants explain:

Plaintiff's fourth claim originally alleged that he did not get his proportionate share of the other assets, *i.e.*, Oxiteno, Halcon R & D and Halcon SD, distributed upon Halcon's liquidation in 1981. When Halcon's principal remaining assets were sold in August 1982, however, plaintiff requested that his fourth claim be treated as a claim for damages arising from that sale. (*See* Plaintiff's Memorandum of Fact and Law in Opposition to Defendants' Motion

for Dismissal or Summary Judgment and in Support of Plaintiff's Motion for Summary Judgment, dated September 2, 1982, at 46). Although plaintiff has never formally amended his fourth claim, we assume he is alleging that he did not get his ratable share of the cash proceeds distributed following the sale to Texas Eastern because of the bonus payments that were made.

Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 11 n. 4.

holders collectively, [and are] to be enforced by a derivative action." Thus, where a plaintiff shareholder claims that the value of his stock will deteriorate and that the value of his proportionate share of the stock will be decreased as a result of alleged director mismanagement, his cause of action is derivative in nature.

A claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders. Any devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder. Thus, the wrong alleged is entirely derivative in nature.

*Id.* at 353 (quoting *Bokat,* 262 A.2d at 249) (citations omitted).

█ Plaintiff pleads in Claim Three that after the board of directors sold certain assets of the corporation, the distribution of the cash proceeds was not made ratably to all stockholders, in that persons who were not stockholders received a portion of the proceeds. Second Am.Compl. ¶ 44. The distribution to those other than stockholders or creditors, plaintiff complains, resulted in a reduction of the amount to which plaintiff as a stockholder was entitled. Second Am. Compl. ¶ 46. In the Fourth Claim plaintiff makes the identical allegation of injury as to different former corporate assets. Second Am.Compl. ¶ 50. This Court finds that each of these claims alleges a diminution in value of all Class C stock because of corporate mismanagement. This is precisely the type of claim that the Delaware courts hold is derivative in nature and may not be the subject of suit by an individual stockholder seeking recovery for his personal loss. *Bokat,* 262 A.2d 246; *Kramer,* 546 A.2d 348.

█ An exception to the rule—the special injury exception—permits a plaintiff to bring a direct action if the wrong alleged inflicts a direct and disproportionate injury to the shareholder. *Elster v. American Airlines, Inc.,* 34 Del.Ch. 94, 100 A.2d 219

(1953). In the instant case, plaintiff alleges that the payment of bonuses by the corporation caused a diminution in value of all Class C stock and that he, as a holder of Class C shares was injured. Plaintiff is not within the special injury exception. Therefore, Delaware law requires that claims such as are alleged in the instant complaint be brought derivatively, not directly.

Because Delaware law would characterize plaintiff's Third and Fourth Claims as a derivative action, those claims must be treated as such by this Court.[8]

### B. Rule 23.1 and Standing

█ Procedural rules are determined by federal law. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Sax v. World Wide Press, Inc.,* 809 F.2d 610, 613 (9th Cir.1987). Fed.R.Civ.P. 23.1 provides in pertinent part:

Rule 23.1 Derivative Actions by Shareholders

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation ... the corporation ... having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains ... and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort....

Fed.R.Civ.P. 23.1.[9]

Although rule 23.1 sets forth the procedural requirements for litigating a derivative action under the diversity jurisdiction of a federal court, the rule does not impose a

---

8. Plaintiff also alleged, in ¶ 25 of the complaint, a conspiracy on the part of defendants to violate fiduciary duties owed to plaintiff and other minority stockholders.

9. Delaware Court of Chancery Rule 23.1 mirrors the federal statute.

demand requirement. As Judge Winter explained in *RCM Sec. Fund, Inc. v. Stanton,* 928 F.2d 1318 (2nd Cir.1991), the rule requires only that plaintiff allege with particularity the efforts made, if any, to induce the directors to bring the litigation. The standard by which those efforts are measured must be located outside the rule and determined by examining the purposes served by the demand requirement. Judge Winter found that the requirement is imposed so that the appropriate corporate authority may be consulted about litigation brought in the name of the corporation. "Judicial review of a corporate decision to bring, not to bring or to terminate a lawsuit is in turn governed by the business judgment rule, as determined by the law of the state of incorporation.... The demand requirement and the business judgment rule are based on identical principles of the law of corporate governance." *Id.* at 1326. Judge Winter reasoned that since there is nothing procedural about a rule that regulates the role and power of a board of directors regarding the conduct of litigation, the source of the demand requirement must be the law of the state of incorporation. The court concluded:

> We therefore hold that Rule 23.1 is a rule of pleading that creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question. However, the adequacy of those efforts is to be determined by state law....

*Id.* at 1330.

Plaintiff may argue that because the corporation was dissolved in 1981 and he brought his action in 1982, there was no legal entity that could be the recipient of a demand. However, Del.Code Ann. tit. 8, § 278 provides in pertinent part:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business.... With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

This entire discussion adds up to the fact that plaintiff did not intend to bring Claims Three and Four as a derivative suit in accordance with Delaware law. He states direct claims against Halcon and its former directors, and fails to abide by the pleading requirements of rule 23.1 despite three years, post liquidation, in which he could have made demand.

### C. Demand Futility

Even if this Court were to construe plaintiff's claims as asserting a derivative action, the Court would have to search the complaint to determine whether there are allegations of futility sufficient under Delaware law to excuse demand. In paragraph 25 of the Complaint, plaintiff pleads that the merger of old Halcon into Archon with the surviving corporation named Halcon was

> the result of a conspiracy among the defendants and the other directors and officers of Archon and Old Halcon to deprive plaintiff and other holders of Archon Class A Common Shares of [sic] realizing their true value. On information and belief, the sole purposes of the merger were to create a new class of stock of Archon (renamed Halcon), that is, the Class C common stock which was issued plaintiff "in exchange" for his existing Class A common stock in anticipation of a sale of all or a major part of Halcon by defendants Landau, Rehnberg and Rehnberg Estate/Trust, in order to increase the financial benefit of such proposed sale to said defendants, in violation of their fiduciary duty to plaintiff, and other minority stockholders, to the detriment and damage of plaintiff and others in

like circumstances.... The only change effectuated was elimination of the rights of the minority stockholders to dispose of certain Archon Class A common stock.

Second Am.Compl. ¶ 25.

In paragraph 26, of the Complaint, plaintiff pleads:

> [B]y the mechanism of the merger of Old Halcon into Archon (renamed Halcon) and the exchange of ... Class A Common Stock, defendants Landau and Rehnberg eliminated plaintiff's right to sell his Archon Class A Common Stock in 1980 and 1985....

*Id.* ¶ 26.

Paragraph 30 of the Complaint states:

> As a result of the merger and subsequent tender offer ... defendants Landau and Rehnberg, and their families, owned and controlled 99% of the outstanding shares of Archon (renamed Halcon.).

*Id.* ¶ 30.

The issue presented is, do these allegations excuse presuit demand under Delaware law?

At the outset, it is noted that a rule 23.1 defense is usually pleaded or waived like a rule 12(b)(6) defense. The instant case differs in that the discussion is hypothetical, addressing the status of plaintiff's claims as if they were pleaded as derivative claims, which they were not.[10]

The generating principal of the Delaware Corporation law is that the management of the business affairs of a corporation is posited in the hands of the board of directors. Del.Code Ann. tit. 8, § 141(a). Directors owe fundamental fiduciary obligations to the shareholders. The derivative suit is a mechanism by which shareholders can seek redress for claimed breaches of the fiduciary duty owed to them. Because derivative suits create a certain tension between the managerial prerogatives of the directors and the alleged rights of the shareholders, rule 23.1 stands at the threshold to filter unfounded claims. The rule will excuse a stockholder

demand that corporate disputes be resolved by the corporation only if the complaining stockholder, in his complaint, makes well pleaded allegations that demand on the corporation is futile.

*Aronson v. Lewis,* 473 A.2d 805 (Del.1984) is the leading case in Delaware on the excusal of presuit demand. It recognizes a presumption that directors making a business decision who are disinterested and independent act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interests. *Aronson,* 473 A.2d at 812.

The test for determining whether presuit demand is excused reflects the interrelationship of business judgment, director independence and interest. *Pogostin v. Rice,* 480 A.2d 619, 624 (Del.1984). The test is bifurcated. A court must determine after examining the well pleaded facts of the complaint whether they create a reasonable doubt that:

> (1) The directors are disinterested and independent; and
>
> (2) The challenged transaction was the product of a valid exercise of business judgment.

In this case, plaintiff does not claim that the directors were interested in the bonus payments. Rather, he asserts that the directors were under no legal obligation to make the distributions, and therefore the authorization of bonus payments was not the product of a proper business judgment. Thus we need examine plaintiff's allegations under *Aronson* to determine only whether he raises a reasonable doubt that the directors exercised proper business judgment. *Starrels v. First Nat'l Bank of Chicago,* 870 F.2d 1168, 1171 (7th Cir.1989).

Although plaintiff pleads that he was harmed by the diminution in stock value, he alleges this was the result of a conspiracy by Landau and the Rehnberg interests to reorganize the corporation, sell off its assets, and thereby unfairly enrich themselves to his det-

---

10. Defendants made and then withdrew at the beginning of this case a motion to dismiss Claims Three and Four. Defendants' motion for summary judgment as to these claims was denied by

Opinion and Order of August 8, 1989. In the Court's Opinion and Order of April 24, 1991, the Court invited defendants to renew the summary judgment motion as to Claims Three and Four.

riment. At the times in question, Landau and Rehnberg, founders of the corporation, owned all of the voting Class B stock. The Class A stock was non-voting stock and contained two important restrictions: first, if the majority of the Class B stock voted for a merger, all holders of Class A stock would be held to have consented to the merger; and second, in the event of a merger, the holders of Class A stock would surrender their stock for equivalent shares in the merged corporation (in this case, the new Halcon corporation).

Plaintiff was thus contractually required not to contest the merger and to surrender his Class A stock in exchange for Class C stock. He nonetheless complains that in the exchange of his Class A stock for Class C stock, the Class C stock was of less value and had greater restrictions placed thereon. The only restriction he specifies is the failure of Class C stock to bear the legend that if held for ten years the holder could sell the stock with the company having the right of first refusal. This Court has held [11] that plaintiff, for value received, had already surrendered this right. It has further been held that the restrictions placed on plaintiff's stock were valid and were validly exercised under New York law and Delaware law. *Peters v. Halcon International, Inc.,* No. 9239/82 (N.Y.Sup.Ct. Nov. 21, 1983) (relying upon Delaware law), *aff'd,* 104 A.D.2d 745, 480 N.Y.S.2d 300 (1984), *leave to appeal denied,* 64 N.Y.2d 609, 489 N.Y.S.2d 1026, 478 N.E.2d 210 (1985); *see also Coleman v. Taub,* 638 F.2d 628 (3rd Cir.1981); *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 562 F.2d 1040, 1053 n. 17 (8th Cir.1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978).

Plaintiff has not alleged or pleaded any cognizable claim of impropriety as to the merger and exchange of stock. Plaintiff was contractually obligated to consent to each transaction and each was a valid exercise of corporate power under Delaware law. *Coleman v. Taub,* 638 F.2d 628.

Plaintiff contends that the purpose of the reorganization was to permit defendants to sell off the major assets of the reorganized corporation, pay bonuses to those not legally entitled to them and enrich themselves to plaintiff's detriment.

The uncontroverted facts reveal that in June 1980 the corporation sold its major asset, the Oxirane Group, for approximately $286 million. Because of tax consequences to shareholders, they were advised that the corporation would be liquidated within one year of the date of the sale and that plaintiff would receive his share as a distribution in liquidation.[12] The balance of the corporation's assets were spun off into various legal entities and placed in a Liquidation Trust. The Liquidation Trust, after deducting the bonuses approved for certain key employees, paid each Class C shareholder his pro-rata share of the Oxirane sale and his pro-rata interest in the spin-off companies.[13]

The essence of plaintiff's claim is that the board of directors had no legal right to vote the bonuses, thereby diminishing his *pro rata* share of the sale proceeds. It may be characterized as a claim of waste of corporation assets.

Delaware law authorizes directors to compensate its officers and agents, Del.Code Ann. tit. 8, § 122(5), and provide incentive and other compensation plans for directors, officers and employees. Del.Code Ann. tit. 8,

---

**11.** *Burghart v. Landau,* No. 82 Civ. 2181 (S.D.N.Y. Feb. 6, 1984).

**12.** Landau Aff. [Nov.1982] Ex. L.

**13.** Prior to voting the bonuses, the Executive Committee of the Plan and Board of Directors received an opinion letter from its counsel concerning the bonuses. The letter stated in part:

In view of these provisions [of the Plan], we believe that a court would be very reluctant to overrule an interpretive decision of the Committee and would do so only if it believed that the Committee had acted arbitrarily and capriciously. Since the Committee intends to make a cash distribution to the holders of Related Options in an amount which it believes equitably reflects an appropriate sharing of the proceeds of the Oxirane transaction ... and since it is intended that the employees of the continuing Halcon businesses will be given a similar incentive arrangement relating to those businesses, we believe it is highly unlikely that a Court would reverse the determination of the Committee....

Landau Aff. [Nov.1982] Ex. B at 2.

§ 122(15). Absent "actual fraud," the judgment of the directors as to the consideration paid for such benefits is conclusive. 8 Del. Code Ann. tit. 8, § 157.

In *Michelson v. Duncan,* 407 A.2d 211, 224 (Del.1979), the court held that section 157 did not bar a claim of waste where the claim alleged an absolute absence of consideration, as distinguished from an inadequate payment of consideration. Consideration is defined as a grant conferred by the corporation whereby the corporation may reasonably expect to receive a benefit from the transaction. *Beard v. Elster,* 39 Del.Ch. 153, 160 A.2d 731, 736 (1960).

In the instant case, the bonuses were awarded under a stated longstanding policy of the corporation to reward key employees.[14] They were voted as additional compensation to the employees who were believed primarily responsible for the success of the Oxirane venture, and to significant employees of the spin-off companies in order to encourage them to remain with those companies.[15]

Landau and Rehnberg, members of the committee who owned over 90% of the stock, voted in favor of the bonuses although payment of the bonuses reduced their distributive share of the liquidation assets.[16] The executive committee and the board of directors received an opinion from outside counsel before approving the bonuses.[17] Thereafter the board unanimously approved the bonuses. Two of the nine board members received payments, neither of whom was Landau or Rehnberg.

Because the bonus payments were made for valid consideration and were recommended by a disinterested executive committee, approved by the opinion of outside counsel and unanimously approved by a nine-member board of directors, only two of whom received benefits, and as to whom plaintiff does not allege a controlling position, this Court finds that plaintiff has failed to create a reasonable doubt whether the bonuses were the product of the directors' business

judgment. Claims Three and Four are dismissed. Delaware law requires that plaintiff make demand upon the corporation before bringing claims such as Claims Three and Four.

## CONCLUSION

Defendants' motion for summary judgment on plaintiffs' two remaining claims is hereby granted.

IT IS SO ORDERED.

---

**14.** *See supra* note 3.

**15.** The rewarded employees stayed and the companies were sold in August 1982 for over $43 million.

**16.** Landau Aff. [Nov.1982] at 19.

**17.** *See supra* note 13.