In re FIRST CENTRAL FINANCIAL CORPORATION, Debtor.

Martin Ochs, as Chapter 7 Trustee of First Central Financial Corporation, Plaintiff,

v.

Martin J. Simon, Saul Erdman, Herbert V. Friedman, Harvey Mass, Andrew W. Attivissimo, Raymond Brancaccio, Joel I. Dollinger, Allan R. Goodman, Harvey S. Jacobs, Joan M. Locascio, Louis Gottlieb, Louis Siracusano, Ralph Drabkin, Joseph Ciorciari, Seymour Uslan, Defendants.

Bankruptcy No. 98–12848–608.
Adversary No. 99–1215–608.

United States Bankruptcy Court, E.D. New York.

Nov. 6, 2001.

Joseph W. Muccia, Corbin Silverman & Sanseverino, LLP, New York City, for the Superintendent of Insurance for the State of New York.

Martin P. Ochs, Ochs & Goldberg, LLP, New York City, Chapter 7 Trustee.

Norman N. Kinel, Sidley Austin Brown & Wood LLP, New York City, for Martin P. Ochs, Chapter 7 Trustee.

## MEMORANDUM DECISION

CARLA E. CRAIG, Bankruptcy Judge.

This matter comes before the Court on the motion of Superintendent of Insurance

for the State of New York (the "Superintendent"), in his capacity as Liquidator of First Central Insurance Company, to dismiss or stay this adversary proceeding, commenced by the Chapter 7 Trustee, on the grounds that the Chapter 7 Trustee lacks standing to assert claims against certain former officers and directors of the debtor holding company for mismanagement and breaches of fiduciary duty and recovery of fraudulent conveyances. In the alternative, the Superintendent seeks relief from the automatic stay to permit this question to be decided in state court. For the reasons set forth herein, the Superintendent's motion is denied.

### Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(F), (G), (H) and (O) and the Eastern District of New York standing order of reference dated August 28, 1986. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law to the extent required by Fed.R.Bankr.P. 7052.

### Facts

The relevant facts set forth below are not in dispute (at least as between the Trustee and the Superintendent), except as otherwise indicated. The debtor, First Central Financial Corporation ("FCFC" or "debtor"), is a holding company that owns all of the shares of First Central Insurance Company ("FCIC"), a New York regulated insurance company. (Doc. 1 ¶¶ 5, 25.)[1] FCFC and FCIC shared many common officers and directors—ten out of the fifteen defendants in this adversary proceeding were officers and directors of both FCFC and FCIC. (Doc. 1 ¶¶ 9–23, 33.)

The remaining five defendants were officers and/or directors of FCFC, but not of FCIC. (Doc. 14 at 9.) On September 6, 1997, the New York State Insurance Department issued a "Report on Examination of the First Central Insurance Company as of December 31, 1996" ("Insurance Department Report"), providing a highly detailed account of the operations of both FCFC and FCIC during the years 1992 through 1996, based on an audit and investigation which lasted over one year. (Doc. 1 ¶ 34.) Among other things, the Insurance Department Report found that FCIC was insolvent, that the officers and directors failed properly to maintain books and records, failed properly to handle, evaluate and process insurance claims, and failed to establish adequate reserves required under applicable insurance laws. (Doc. 1 ¶¶ 35–39; Doc. 24 at 5.) On January 28, 1998, the New York Supreme Court, Nassau County ("state court") entered an order pursuant to N.Y.Ins.Law § 7402 (McKinney 2000) directing the Superintendent to rehabilitate FCIC. (Doc. 1 ¶¶ 6, 26, 31; Affidavit of James Sandnes dated August 9, 2000, Ex. 1(A), 2, hereinafter, "Sandnes Aff.")

FCIC's failure quickly led to the financial collapse of FCFC. (Doc. 24 at 6.) On March 5, 1998, FCFC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. (Doc. 1 ¶ 7.) By order dated April 30, 1998, this Court converted FCFC's Chapter 11 case to Chapter 7, and by order dated May 7, 1998 appointed Martin P. Ochs as the Chapter 7 Trustee of FCFC's estate ("Trustee" or "plaintiff"). (Doc. 1 ¶ 8)

---

**1.** Citations to "Doc." refer to documents listed on the docket of this adversary proceeding, identified by docket number.

On May 4, 1999, the Trustee, on behalf of FCFC's estate, commenced this adversary proceeding against FCFC's former officers and directors, in their capacity as fiduciaries of FCFC, seeking recovery for, *inter alia,* their breach of fiduciary duty to FCFC ("Trustee's Action"). The Trustee's Complaint asserts that FCFC's officers and directors breached their fiduciary duty to FCFC by committing waste and mismanagement of corporate assets committed to their charge, including waste and mismanagement arising out of their management and control of FCFC and its wholly-owned subsidiaries. (Doc. 1 at ¶¶ 47–75.) The Trustee's Complaint also asserts claims for recovery of fraudulent conveyances by FCFC to the directors and officers of FCFC under 11 U.S.C. §§ 544 and 548 and the New York Debtor and Creditor Law. On March 21, 2000, the Superintendent, on behalf of FCIC's estate, commenced his own action in state court against FCIC's officers and directors ("Superintendent's Action"). The Superintendent's complaint asserts claims for damages suffered by FCIC when FCIC's officers and directors breached their duty to FCIC by, *inter alia,* wasting corporate assets, issuing illegal dividends, misrepresenting the financial condition of FCIC, and violating New York insurance law. (Doc. 14 at 10.)

The claims asserted in the Superintendent's Action and the Trustee's Action are all covered by a single officer and director liability policy issued by the Great American Insurance Company ("D & O Policy").[2] The D & O Policy covers the officers and directors of both FCFC and FCIC and provides an aggregate of $2 million of coverage inclusive of defense costs. (Doc. 24 at 10.) Although the Trustee's Action and the Superintendent's Action are not limited to recovery from the D & O Policy, there is no question that the D & O Policy is regarded by both the Trustee and the Superintendent as a significant potential source of payment of any judgment that may be obtained by either of them. (Doc. 24 at 10.) Consequently, the Superintendent and the Trustee are in a race for the same insurance proceeds.

In an effort to insure that the insurance proceeds will be available as a source of recovery for any judgment obtained in his action, the Superintendent makes the instant motion based on the theory that the causes of action asserted in the Trustee's Action against the officers and directors of FCFC, many of who were also officers and directors of FCIC, belong exclusively to FCIC, and may only be prosecuted by the Superintendent in his capacity as Liquidator of FCIC. The Superintendent seeks dismissal of the Trustee's Action on the grounds that the Trustee lacks standing because the claims asserted in the Trustee's Action are derivative rather than direct. The Superintendent further contends that even if some of the claims asserted in the Trustee's Action are direct, this Court should dismiss or stay the

---

**2.** A purchaser of the common stock of FCFC commenced a putative class action against the officers and directors ("Putative Class Action") in district court alleging violations of federal securities law and certain other claims. (Doc. 14 at 10–11; Doc. 24 at 9.) Recognizing that this is potentially a competing claim against the insurance proceeds, the Trustee commenced an action to enjoin the Putative Class Action, on the grounds that the insurance proceeds were property of FCFC's estate. That action has since been dismissed by this Court. *See Ochs v. Lipson (In re First Central Fin. Corp.),* 238 B.R. 9 (Bankr. E.D.N.Y.1999), *aff'd, Ochs v. Lipson (In re First Central Fin. Corp.),* No. 99–CV–6730 (TCP) (E.D.N.Y. Mar. 2, 2000). The officers and directors have moved to dismiss the Putative Class Action, which motion has been fully briefed and argued and is *sub judice* before the district court. (Doc. 24 at 9.)

Trustee's Action so as not to interfere with the state court's order of liquidation. The Superintendent alternatively seeks termination of the automatic stay to permit the Superintendent to seek adjudication of the claim ownership issues from the New York state court, and to enforce the order of liquidation.

. At the core of the Superintendent's motion to dismiss is this question: Are the claims asserted by the Trustee, as the representative of FCFC's bankruptcy estate, in the Trustee's Action, direct or derivative in nature?

### Standard for Motion to Dismiss

The instant motion to dismiss is governed by Fed.R.Civ.P. 12(b)(6), made applicable in bankruptcy proceedings by Fed. R.Bankr.P. 7012. A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). When determining the sufficiency of the plaintiff's claim, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001), *citing Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000). The court's consideration is limited to the assertions made within the four corners of the complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit. *Gregory*, 243 F.3d at 691; *Brass v. Ameri-*

*can Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

### The Superintendent's Standing

The Superintendent argues that, although he is not a party to this adversary proceeding, he has standing to seek its dismissal under § 1109(b) of the Bankruptcy Code, which confers standing upon any "party in interest" to "raise and ... appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The Trustee disagrees, asserting that § 1109(b) does not confer standing on parties in interest to appear in adversary proceedings, but only to appear in bankruptcy cases. *See Term Loan Holder Comm. v. Ozer Group (In re Caldor, Inc.)*, 2000 WL 546465, at *5 (S.D.N.Y.2000) (holding that § 1109(b) does not confer standing on parties in interest to appear in adversary proceedings); *but see, e.g., Sarah R. Neuman Foundation, Inc. v. Garrity (In re Neuman)*, 124 B.R. 155, 158–60 (S.D.N.Y.1991) (to the contrary). In the alternative, the Superintendent seeks leave to intervene pursuant to Fed.R.Bankr.P. 7024. The Trustee also opposes intervention, on the grounds that it is untimely, and on the grounds that the Superintendent lacks an interest in the Trustee's Action within the meaning of Fed.R.Civ.P. 24(a), made applicable in bankruptcy proceeding by Fed.R.Bankr.P. 7024.

Because the Superintendent's motion must be denied on the merits, it is unnecessary to determine whether the Superintendent has standing to make this motion, or should be permitted to intervene for that purpose. This decision accordingly does not reach these questions.

### Are the Claims Asserted in the Trustee's Action Direct or Derivative?

It is well established that a party must "assert his own legal rights and in-

terests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir. 1991). Since a bankruptcy trustee stands in the shoes of the debtor corporation, he has standing only to bring those actions that the debtor corporation could have brought. *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1093 (2d Cir.1995); *Wagoner,* 944 F.2d at 118. The Superintendent contends that the claims asserted in the Trustee's Action against the officers and directors of FCFC are claims based on damages to FCIC, not FCFC, and that therefore they are derivative claims that belong solely to the Superintendent and not to the Trustee. The Trustee contends that his claims are direct, not derivative, because the Trustee's Action is asserting claims against FCFC's officers and directors for breach of their fiduciary duty to FCFC, which resulted in damage to FCFC. The Trustee further contends that he may assert such claims whether or not some of the defendants are also officers and directors of FCIC, because he is suing the defendants in their capacity as fiduciaries to FCFC, not fiduciaries to FCIC.

■■ Whether the claims at issue are derivative or direct is determined under New York law. *Sobchack v. American Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.),* 17 F.3d 600, 607 (2d Cir.1994) ("Bankruptcy courts have long been charged with ascertaining, under state law, whether claims belong to the bankruptcy estate or to other claimants"); *Brandt v. Bassett (In re Southeast Banking Corp.),* 827 F.Supp. 742, 745 (S.D.Fla. 1993), *rev'd in part on other grounds,* 69 F.3d 1539 (11th Cir.1995) ("Whether a claim is direct or derivative is a matter of state law"). In this analysis, the court must look to the nature of the wrongs alleged in the body of the plaintiff's complaint rather than the characterization employed by the parties. *Cabrini Dev. Council v. LCA–Vision, Inc.,* 197 F.R.D. 90, 97 (S.D.N.Y.2000).

In *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Supreme Court provided the following succinct explanation of the nature of a derivative claim:

> We have noted that the derivative suit has dual aspects: first, the stockholder's right to sue on behalf of the corporation ... second, the claim of the corporation against directors or third parties.... The claim pressed by the stockholder against directors or third parties "is not his own but the corporation's." The corporation is a necessary party to the action; without it the case cannot proceed. Although named a defendant, it is the real party in interest, the stockholder being at best the nominal plaintiff. The proceeds of the action belong to the corporation and it is bound by the result of the suit.

*Ross,* 396 U.S. at 538, 90 S.Ct. 733 (citation omitted).

■■ Thus, shareholders may institute an action against directors or third parties, on behalf of the corporation, for an injury to the corporation that the management of the corporation has failed to redress. *Ross,* 396 U.S. at 538, 90 S.Ct. 733; 5 James WM. Moore et al., Moore's Federal Practice § 23.1.02[1] (3d ed.2001). But shareholders lack standing to maintain an action on their own behalf to redress injuries to a corporation because it is the corporation who is the real party in interest. *Qantel Corp. v. Niemuller,* 771 F.Supp. 1361, 1367 (S.D.N.Y.1991). Any recovery from a derivative suit inures to the corporation, not to the shareholders who instituted the suit. *Ross,* 396 U.S. at 538, 90 S.Ct. 733. This is consistent with

the law that the claim pressed by the stockholder in a derivative action is not his own but the corporation's. *Ross*, 396 U.S. at 538, 90 S.Ct. 733 (citing *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947)); *Ionosphere Clubs*, 17 .F.3d at 605 n. 5.

■ *Niles v. New York Cent. & H.R.R. Co.*, 176 N.Y. 119, 68 N.E. 142 (1903) sets forth the general rule, applicable in New York, that where an injury is suffered by a corporation and the shareholders suffer solely through depreciation in the value of their stock, only the corporation itself, or a stockholder suing derivatively in the name of the corporation, may maintain an action against the wrongdoer. *Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir. 1975). Based upon this general rule, the Superintendent argues that the Trustee's Action is derivative because FCFC, as the shareholder of FCIC, suffered solely through depreciation in the value of its stock in FCIC. (Doc. 14 at 20.)

The Superintendent's characterization of the Trustee's Action as a "disguised derivative action" is mistaken. The Trustee's Action is not derivative, disguised or otherwise. While FCFC is the sole shareholder of FCIC, it is not suing in that capacity in the Trustee's Action. It is seeking redress against FCFC's officers and directors for damages to FCFC caused by their alleged breaches of fiduciary duty owed to FCFC. Furthermore, the Trustee is not seeking to recover damages on behalf of FCIC, but is seeking to recover damages on behalf of FCFC's bankruptcy estate. (Doc. 14 at 2.) Thus, *Niles* is not the controlling authority in this case. Nonetheless, in an effort to squeeze the Trustee's Action into the pigeonhole of a derivative claim, the Superintendent argues that under the principles enunciated in *Niles,* the Trustee's Action must be treated as derivative. In order to maintain this position, the Superintendent struggles in vain to avoid the application of *General Rubber Co. v. Benedict*, 215 N.Y. 18, 109 N.E. 96 (1915).

■ *General Rubber* has been characterized as an exception to the general rule that "an action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation." *Qantel*, 771 F.Supp. at 1367, *Vincel*, 521 F.2d at 1118 (citations omitted). *General Rubber* stands for the proposition that a shareholder has a direct claim against the defendant for damages suffered as a result of the waste of the assets of a subsidiary, if there was a special relationship between the suing shareholder and the defendant creating a duty, contractual or otherwise. *General Rubber*, 215 N.Y. at 26, 109 N.E. 96; *Vincel*, 521 F.2d at 1118; *Qantel*, 771 F.Supp. at 1367.

In *General Rubber*, the holding company of a wholly-owned foreign subsidiary brought suit against its own director, alleging that he breached duties owed directly to the parent when he failed to reveal and concealed defalcations occurring at the subsidiary level. *General Rubber*, 215 N.Y. at 21, 109 N.E. 96. Judge Cardozo, writing for the New York Court of Appeals, held that the director defendant was liable to the holding company for the damages suffered as a result of the breach of the fiduciary duty owed by the defendant to the holding company of which he was a director. Judge Cardozo took pains to explain the critical distinction between an action by a corporation, in its capacity as shareholder, against the director of a subsidiary for breach of the fiduciary duty owed to the subsidiary (which is derivative), and an action by a corporation against its own director for breach of the fiduciary duty owed by the director to the plaintiff (which is not derivative):

The defendant was not a director of the subsidiary company. He was a director of the plaintiff. Because of that relation he owed to the plaintiff the duty of good faith and vigilance in the preservation of its property. The duty and the breach, coupled, it is here alleged, with damage, make out a cause of action. Such cases as ... *Niles v. N.Y.C. & H.R.R.R. Co.,* (176 N.Y. 119, 68 N.E. 142) are pressed upon us by the defendant. They are inapplicable here.... The stockholder in those cases did not sue his own agent. He sued another's agents, i.e., the directors of a company, and sued them for the waste of the company's property. In his own right, and not in a derivative action, he attempted to recover his own damages, which he measured by the diminution in the value of his shares. The decision was that the delinquent directors were the agents of the company; that they owed a duty to the company and not to the individual stockholders; and that if there had been any breach of that duty the company must redress the wrong.... Here the stockholder is not suing the agent of another company; it is suing its own agent. The stockholder happens to be itself a corporation; the defendant happens to be a director; but the legal problem would be the same if the plaintiff were a natural person, and the defendant an executor or trustee.

*General Rubber,* 215 N.Y. at 21–22, 109 N.E. 96 (citations omitted).

Judge Cardozo went on to illustrate the incongruous result that would flow from holding that a director (or other fiduciary, such as a trustee) could not be sued by the individual or entity to which his fiduciary duty is owed, where the breach of fiduciary duty involves permitting or participating in mismanagement of a subsidiary:

If the trustee of an estate, holding shares in a bank, should learn that the cashier was looting it, and with that knowledge should keep silent, the defendant would have us say that the beneficiaries under the will would have no remedy for the ensuing loss. A trustee in the case supposed would owe no duty of active vigilance to the bank whose property was stolen. If not liable to those interested in the estate, he would not be liable to any one. Yet his duty to preserve the estate, the breach of that duty, and the resulting damage, would seem to call for the application of the principle that there is no wrong without a remedy. The case supposed does not differ in its essence from the case presented. The defendant, as a director of a corporation should have taken the same care of its property that men of average prudence take of their own property.

*General Rubber,* 215 N.Y. at 22–23, 109 N.E. 96.

This is exactly the result that would flow in this case from the position advocated by the Superintendent. In this case, five of the fifteen directors of FCFC who have been sued by the Trustee for breach of their fiduciary duty to FCFC are *not* officers or directors of FCIC. These individuals are not defendants in the Superintendent's Action, nor does the Superintendent have any claim against them. If the claims asserted by the Trustee against FCFC's directors must be dismissed as "disguised derivative" claims, then these individuals may not be sued by anyone, notwithstanding their alleged breach of fiduciary duty as directors of FCFC. This anomalous result, as Judge Cardozo held, "call[s] for the application of the principle that there is no wrong without a remedy," *General Rubber,* 215 N.Y. at 22–23, 109 N.E. 96, and makes it clear that the Trustee, on behalf of FCFC, may recover from

FCFC's directors and officers for breaches of their fiduciary duty to FCFC to the extent of any resulting damage to FCFC.

The clear applicability of *General Rubber* should not be obscured in this case by the fact that ten out of the fifteen defendants were officers and directors of both FCFC and FCIC. This overlap of officers and directors does not change the result. "Individuals who act in a dual capacity as directors of two corporations, one of whom is parent and the other subsidiary, owe the same duty of good management to both corporations, and in the absence of an independent negotiating structure, or the directors' total abstention from any participation in the matter, this duty is to be exercised in light of what is best for both companies." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710–11 (Del. 1983). Although the defendant in *General Rubber* was only a director of the plaintiff holding company, and not of the subsidiary, subsequent cases have applied the *General Rubber* analysis to a defendant who was a director of both the parent company and the subsidiary. *Hopps v. Claude Neon*, 281 A.D. 90, 91, 117 N.Y.S.2d 461 (1st Dep't 1952); *Qantel*, 771 F.Supp. at 1367–68 (holding that *General Rubber* applies to a defendant who was a director of the subsidiary and its indirect parent). Two New York cases in particular, *Hopps* and *Parascandola v. National Sur. Co. (In re Auditore's Will)*, 249 N.Y. 335, 341, 164 N.E. 242 (1928), make it clear that a plaintiff does not lose the right to sue a fiduciary for breach of duty because the defendant holds two positions of trust.

The defendant in *Hopps* was a director of the parent company and its subsidiary. *Hopps*, 281 A.D. at 91, 117 N.Y.S.2d 461. He breached his duty as a fiduciary of both corporations in mulcting the subsidiary of its assets. *Id.* The court found that the parent company had a direct cause of action against the director under *General Rubber*, because he breached his duty to his principal to care for its property. *Id.* The fact that the defendant was also a director of the subsidiary and that the subsidiary may also have a cause of action against the defendant was held to be no bar to the action because "[t]he wrongs are separate and distinct [and] [b]oth are actionable." *Id.*

In *Auditore's Will*, the defendant held two positions of trust, one as an officer and director of a corporation and the other as an administrator of his brother's estate. *Auditore's Will*, 249 N.Y. at 341, 164 N.E. 242. The defendant misappropriated funds of the corporation, in which the decedent's estate owned 50 percent of the stock. *Id.* A derivative action to recover for damages for the misappropriations was commenced against the defendant and the claim was reduced to judgment. *Id.* The court concluded that the judgment recovered by the corporation did not bar the decedent's estate from instituting its own proceeding to recover damages, because "[t]he remedies are not inconsistent; they are applied to different duties and relationships." The defendant's breach of duty as an officer of the corporation did not expunge, obliterate or override his breach of duty as administrator. *Id.* at 342–43, 164 N.E. 242.

This issue is clarified when the dual capacities of the defendants, one as fiduciary to FCFC and the other as fiduciary to FCIC, are treated separately, as illustrated in the following example. Let us consider the situation where there are two corporations; parent and subsidiary. Each has one director and they are different individuals. The director at the subsidiary level engages in waste and mismanagement. The director at the parent level knows about this and acquiesces in it. Subsequently, the parent company files for

bankruptcy and the trustee of the parent company sues the officer and director of the parent company in an action for breach of fiduciary duty, and failure to adequately supervise the management of the subsidiary, which he has a fiduciary duty to the parent company to do.

Clearly, under *General Rubber*, the parent company has a cause of action against its own director for breach of fiduciary duty for failure to "take[ ] the same care of its property that men of average prudence take of their own property." *General Rubber*, 215 N.Y. at 23, 109 N.E. 96. It is equally clear that the subsidiary has a cause of action against its own director for waste and mismanagement. One of these causes of action does not disappear merely because the director of the two corporations is the same person. *Auditore's Will*, 249 N.Y. at 343, 164 N.E. 242; *Vincel*, 521 F.2d at 1118; *General Rubber*, 215 N.Y. at 23, 109 N.E. 96 ("We think the wrong to the plaintiff does not cease to be remediable because it may also be a wrong to some one else. If the defendant has violated any duty to the subsidiary company, it is not the same duty that he owes to the plaintiff"); *Hopps*, 281 A.D. at 91, 117 N.Y.S.2d 461. Therefore, under the reasoning of *Hopps* and *Auditore's Will*, the Trustee is not precluded from bringing this action even if the Superintendent may also bring an action against the same officers and directors.

The Superintendent argues that *General Rubber* is not applicable to the facts of this case, because (1) the Trustee has not alleged damages cognizable under *General Rubber* and (2) the Trustee has not alleged that there was at least one innocent member of management who could and would have prevented the harm to FCFC.

### The Superintendent's Damages Argument

This argument is based upon the following passage in *General Rubber*, in which Judge Cardozo addressed the possibility of double liability, and distinguished between the damages that may be sought by the parent and the damages recoverable by the subsidiary:

The argument is made, however, that since the duties overlap, a double liability is threatened. To-day the defendant is called upon to make good the diminished value of the plaintiff's shares. To-morrow he may be called upon at the suit of the subsidiary company to replenish its wasted treasury. We think the argument confuses the cause of action with the damages. If the defendant is solvent, and has so made himself a party to the conspiracy that he is liable as a tort feasor to the subsidiary corporation, the existence of such a cause of action will be reflected, like the ownership of any other asset, in the value of the shares. The diminution in value will be one thing if the subsidiary corporation is without a remedy against any one. It will be another thing if there is a remedy against a solvent wrongdoer. It will be one thing is the cause of action in favor of the company is conceded or certain. It will be another thing if the cause of action is contested or doubtful. A contested claim is rarely appraised at its face value. The expenses of litigation, its delays, its uncertainties, these and like elements may make the shares less valuable, even though a remedy at the suit of the company exists, than they would be if the wasted moneys were back in the treasury. The extent of the *reduction in value is to be measured by the jury.* We must keep in mind steadfastly the essential nature of the cause of action. It is not an action to restore to the subsidiary company the money that has been abstracted. It is an action to restore to the holding company the diminished value of its shares . . . .

What has been taken belongs to the subsidiary company. The defendant is not sued for a wrongful taking. He is sued for the wrongful failure to preserve the value of the plaintiffs shares. Only to the extent that the taking has made the individual shares less valuable, has a liability arisen.

*General Rubber*, 215 N.Y. at 24–25, 109 N.E. 96.

The Superintendent contends that the foregoing language in *General Rubber* limits the parent company to actions to recover damages based on the diminished value of its stock in the subsidiary. The Superintendent asserts that FCFC has not suffered injuries actionable under *General Rubber* because the value of FCFC's shares in FCIC did not diminish between 1992 through 1998. This is so, according to the Superintendent, because FCIC's insolvency during this period rendered the book value of its shares zero throughout the period.

To the extent that the Trustee can show damage to FCFC as a result of actions that were taken by its officers and directors, the Trustee may recover from those individuals. According to the Trustee's complaint, these officers and directors of FCFC, in their capacity as fiduciaries to FCFC, caused damage to FCFC by

[R]epeatedly violat[ing] their duties to FCFC and to the creditors of FCFC by, *inter alia*, (a) engaging in or acquiescing in transactions in which they were self-interested and which were not fair to FCFC; (b) misappropriating or acquiescing in the misappropriation of assets of FCFC for their own benefit; (c) causing FCFC to enter or acquiescing in FCFC's entry into agreements, including the Simon Consulting Agreement, for the sole benefit of the Director Defendants or Simon; (d) mismanaging FCFC and its wholly-owned subsidiaries

or acquiescing in their mismanagement and operation other than in FCFC's best interests; (e) operating or acquiescing in the operation of FCFC and its wholly-owned subsidiaries solely to serve their own objectives or the objectives of Simon; (f) delaying or acquiescing in the delay of the filing of a case under the Bankruptcy Code until long after FCFC was rendered insolvent and (g) concealing or acquiescing in the concealing from creditors the true value of the assets of FCFC.

(Doc. 1 ¶ 47.)

■ It is for any such damages to FCFC, as the parent company, that the Trustee is suing for in this action, which losses are separate and distinct from FCIC's injuries. Whether or not, at trial, the Trustee will be unable to establish the existence of any such damages, is a factual matter that cannot be determined on a motion to dismiss. The Court's inquiry on this motion is limited to determining whether the Trustee has pleaded claims which, if proved, would entitle him to relief. *Olesh v. Dreyfus Corp.*, CV–94–1664 (CPS), 1995 WL 500491, at *6 (E.D.N.Y. August 8, 1995).

Thus, the Superintendent's allegations concerning FCIC's insolvency, and concerning what as a result the Trustee will or will not be able to prove by way of damages, raise matters extrinsic to the complaint, which may not be considered on a motion to dismiss. *Brass v. American Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir.1993). Moreover, it is possible that, even if FCIC was insolvent at all relevant times, the Trustee will be able to show that, if FCFC's directors had properly performed their fiduciary duties, FCFC could have been restored to a sound financial footing.

In *General Rubber*, Judge Cardozo discussed damages to the holding company in terms of the diminished value of shares in the subsidiary because the subsidiary was apparently still solvent. This does not mean, however, that *General Rubber* is inapplicable in the context of an insolvency or bankruptcy. *See Southeast Banking*, 827 F.Supp. at 748–49 (noting that the holding of *General Rubber* applies in bankruptcy, and that a Chapter 7 trustee has standing to bring a direct action against the officers and directors of the holding company for a breach of fiduciary duties owed to the holding company).

Citing *Sobchack v. American Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600, 605 (2d Cir.1994), the Superintendent argues that it would defeat the priority scheme created by the Bankruptcy Code if the Trustee, representing the interests of shareholder FCFC, and the Superintendent, representing the interests of FCIC's creditors, were permitted to pursue their claims at the same time. (Doc. 26 at 13.) However, *Ionosphere* is inapposite because it did not involve an action by a holding company against its own officers and directors. *Ionosphere Clubs*, 17 F.3d at 606. *Ionosphere*, by contrast to this case, was a classic derivative action by preferred shareholders against the debtor's former officers and directors for breach of fiduciary duty and tortious interference with contract based on the allegation that the defendants diverted the debtor's assets. *Id.* To permit shareholders to recover in that context would indeed be inconsistent with the priority scheme of the Bankruptcy Code. Here, however, recovery is sought, not from the officers and directors of the subsidiary, but from the officers and directors of the parent, for breach of the duties owed to the parent.

Nor does the holding of *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir.1995) compel a different result. There, the court affirmed the dismissal of a complaint brought by a bankruptcy trustee against the debtor's pre-petition auditors and other professionals, based upon the rule that "the trustee stands in the shoes of the debtors, and can only maintain those actions that the debtors could have brought prior to the bankruptcy proceedings." *Id.* at 1093. This rule required the dismissal of the complaint, the court found, because the claims asserted by the trustee, although numerous, boiled down to two general types: claims based upon the alleged distribution of misleading private placement memoranda to investors, and claims for the "provision of deficient professional services to the debtors." *Id.* at 1092. As to the first category of claims, the court found that the trustee lacked standing because, under applicable state law, the claims for fraud or negligence in the distribution of private placement memoranda belonged to the defrauded investors, and were not claims that could have been asserted by the debtors pre-petition.

As to the second category of claims asserted in *Hirsch*, for malpractice against the debtor's pre-petition professionals, the court found that the trustee lacked standing under the rule of *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991), which prohibits a bankruptcy trustee from asserting claims against professionals or other third parties who allegedly aided and abetted management's defalcations, where all shareholders and members of management were involved in the wrongdoing, such that their guilt can be imputed to the corporation. *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.*, 212 B.R. 34, 35–36 (S.D.N.Y.1997).

The claims asserted in the Trustee's Action do not fall into either of the categories

identified by the court in *Hirsch*. They are not claims that belong to FCFC's shareholders or creditors, nor are they claims against FCFC's professionals or other third parties. They are claims against FCFC's officers and directors, which clearly belong to FCFC. Indeed, the Trustee is the only person with standing to assert these claims. *In re Keene Corp.*, 164 B.R. 844, 853–54 (Bankr. S.D.N.Y.1994) ("Claims based upon breach of a fiduciary duty belong to a corporation, but once bankruptcy ensues, they are enforceable by the trustee . . . . . The trustee, therefore, is the only person with standing to bring those claims . . . [and] the creditors are barred from asserting them"); *In re Interpictures, Inc.*, 86 B.R. 24, 28 (Bankr.E.D.N.Y.1988) ("in an insolvency situation, however, the right to redress damages inflicted upon the debtor is property of the estate").

The Superintendent further asserts that FCFC would be obligated to offset or reduce the damages that would be recoverable by FCFC for the benefits that were obtained by FCFC through its officers' and directors' misconduct. (Doc. 14 at 24–26.) The benefit which, according to the Superintendent, was obtained by FCFC for the wrongful acts of its officers and directors includes, *inter alia*, funneling money to FCFC's bondholders to reduce FCFC's debt to them when that money should have been paid to FCIC's creditors, funneling money to pay rent and expenses, and funneling money to pay the officers and directors. (Doc. 14 at 24–26.)

"The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A'." *Malinowski v. New York State Dept. of Labor*, 156 F.3d 131, 133 (2d Cir.1998). The concept of offset has no application here, because there are no reciprocal debts owed between FCFC, on the one hand, and its officers and directors, on the other hand. To the extent that the Superintendent here is making an argument about what the Trustee will be able to prove by way of damages at trial, this again is a factual issue not properly determined on a motion to dismiss. *Olesh v. Dreyfus Corp.*, CV–94–1664 (CPS), 1995 WL 500491, at *6 (E.D.N.Y. August 8, 1995).

### The Superintendent's Causation Argument

The Superintendent contends that *General Rubber* is limited to those cases where there was an innocent member of management who could have and would have been able to prevent the fraud had he known about it. Absent such an individual, argues the Superintendent, there was no causation, because even if the defendant director had sounded an alarm, damage would not have been prevented, because all of the members of management were involved in the wrongdoing. (Doc. 26 at 11–13.)

This argument reflects continued confusion about the capacity in which FCFC's directors are being sued, and the nature of the breach of duty alleged. They are not being sued as advisors or other third parties, based on an allegation that they breached their duty by failing to report or prevent mismanagement by FCFC's officers and directors. They are being sued as management of FCFC for their own failures and defalcations in the management of FCFC. The causal link is clear. To hold otherwise would mean that a corporation cannot recover from its own officers and directors for waste and mismanagement (through a derivative suit or otherwise) where all of the members of management were involved in the wrongdoing, which clearly is not the law. *See*

*e.g., Brick v. Dominion Mort. & Realty Trust,* 442 F.Supp. 283, 294–95 (W.D.N.Y. 1977) (finding that a derivative plaintiff was excused from making a demand upon the directors to commence an action to recover for management's wrongdoing, where all the directors participated or acquiesced in the wrongs alleged, because demand would be futile); *Papilsky v. Berndt,* 59 F.R.D. 95 (S.D.N.Y.1973) (same).

Comparison of the instant case with *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991), is instructive on this point. There, the Second Circuit held that "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to the creditors, not to the guilty corporation." *Id.* at 120. The rule was framed by the *Wagoner* court as one of standing-that " 'a reorganization trustee lacks standing to assert the claims of creditors against third parties who allegedly aided the bankrupt in diverting its assets....' " *Id.* (citations omitted). The *Wagoner* rule applies only where all relevant shareholders and decisionmakers were involved in the wrongdoing, such that their guilt can be imputed to the corporation. *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.,* 212 B.R. 34, 35–36 (S.D.N.Y.1997). Moreover, the *Wagoner* rule has no application where, as here, the trustee's claims are asserted not against third parties who allegedly permitted or assisted management's defalcation, but against the defalcating managers themselves, for breach of their fiduciary duty to the corporation they managed.

Moreover, the holding in *Wagoner* — that creditors, rather than the trustee, have standing to assert claims against third parties who allegedly aided and abetted the debtor's management in diverting its assets, where all members of management *and* shareholders participated in the fraud—clearly shows the fallacy of the Superintendent's causation argument. If, as the Superintendent contends, there is no causation where all members of management participated in the fraud, such an absence of causation would defeat an action by creditors as well.[3]

The Superintendent's reliance on *General Rubber* on this point is also misplaced. The Superintendent emphasizes that Judge Cardozo focused on the parent company's allegation that the defendant director acquiesced and approved of the defalcation and that the plaintiff could and would have intervened if advised by the defendant of the defalcation at the subsidiary level. From this, the Superintendent argues that the holding of *General Rubber* mandates that a plaintiff must allege that the corporation had at least one innocent director in management who could and would have taken action to stop the defalcation in order for the corporation to assert a claim for breach of fiduciary duty.

A full reading of *General Rubber* does not support this limitation that the Superintendent seeks to place upon its holding. *General Rubber* came before the court as a demurrer to a complaint. To defeat the demurrer, the facts of the plaintiffs complaint must sufficiently allege a direct cause of action against plaintiffs director. In *General Rubber,* the director was alleged to have failed to meet the requisite standard of care that a director of a corporation should have taken the same care of its property that men of average prudence take of their property because he failed to reveal and concealed defalcations

---

**3.** If the Superintendent's argument is correct, the Superintendent's Action also fails for lack of causation, because all of FCIC's officers and directors are alleged by the Superintendent to be involved in the wrongdoing at the FCIC level.

occurring at the subsidiary level. *General Rubber*, 215 N.Y. at 23, 109 N.E. 96. Examining this allegation, Judge Cardozo concluded that it was sufficient because "[a] jury might not unreasonably find that the care exacted by that rule would involve at least a warning that the subsidiary company was in the management of a thief and that the value of the shares was vanishing."

*General Rubber* does not stand for the proposition that the only breach of duty by an officer or director that is actionable is a failure to warn the plaintiff of wrongdoing. Defendants in this action are alleged to have breached their fiduciary duties to FCFC in many different ways. The Trustee has alleged that the defendants breached their fiduciary duties to FCFC when they, among other things, engaged in transactions in which they were self-interested and which were not fair to FCFC; misappropriated or permitted the misappropriation of FCFC's assets for their own benefit; caused FCFC to enter into agreements for their sole benefit; mismanaged FCFC and its wholly-owned subsidiaries; operated FCFC and its wholly-owned subsidiaries for their own benefit; and improperly delayed a bankruptcy filing for FCFC. (Doc. 1 ¶ 47.) It is not necessary in order to hold the defendants liable for their own defalcations to identify an innocent member of management who, if alerted to the defendants' wrongdoing, could have stopped it. If the Trustee can prove that the officers and directors of FCFC breached their fiduciary duty to FCFC, and can demonstrate actual damages proximately caused by that breach of duty, he will be entitled to recover.

### The Superintendent's Request for a Stay of the Trustee's Action

As an alternative to the motion to dismiss, the Superintendent moves to stay the Trustee's Action on the grounds that it is "purposeless litigation" and that the McCarran–Ferguson Act precludes the Trustee's Action.

An action is "purposeless litigation" when a cost benefit analysis indicates that the only parties who will likely benefit from an investigation of a claim are the trustee and his professionals. *McCord v. Agard (In re Bean)*, 251 B.R. 196, 205 (E.D.N.Y.2000). The trustee breaches his duty if the action costs the estate a disproportionately large sum for a minimal or an improbable recovery to the estate. *Id.* As discussed in the previous sections, the Trustee has a direct claim against the former officers and directors of FCFC. There is nothing in the record on this motion from which to conclude that the potential recovery by the Trustee is minimal or improbable. The mere fact that the Superintendent has a competing claim on the insurance proceeds does not render the Trustee's chances of recovery improbable.

Congress enacted the McCarran–Ferguson Act in response to *United States v. South–Eastern Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), which held that the dormant Commerce Clause of the Constitution preempted state insurance regulation. *In re Rubin*, 160 B.R. 269, 278 (Bankr.S.D.N.Y. 1993). In enacting the McCarran–Ferguson Act, Congress declared that "the continued regulation and taxation by the several States of the business of insurance is in the public interest." 160 B.R. at 278 (citing Edward Correia, *How to Reform the McCarran–Ferguson Act*, 22 Mem.St. U.L.Rev. 43 (1991)). The Act provides in relevant part:

(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several

States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance....

The state court has entered an Order of Liquidation vesting ownership of FCIC's claims in the Superintendent. The Superintendent contends that the order imposes an injunction on FCFC, as shareholder, based on the following provision:

The officers, directors, shareholders, trustees, agents, servants, employees, attorneys, and managers of FCIC and all other persons are permanently enjoined and restrained from the transaction of FCIC's business, the waste or disposition of its property, interfering with the Superintendent, as liquidator, in the possession, control and management of FCIC's property or in the discharge of his duties.

Sandnes Aff.Ex. I(A) ¶ 16.

This injunction is statutorily authorized by N.Y. Ins. Law § 7419(b) (McKinney 2000), which provides that the state court "may at any time ... issue such other injunctions or orders as it deems necessary to prevent interference with the superintendent or the proceeding, or waste of the assets of the insurer, or the commencement or prosecution of any actions...." Therefore, the Superintendent argues, if the Trustee's Action is permitted to proceed, it would impair state law regulating insurance, in violation of the McCarran–Ferguson Act.

■■■ The McCarran–Ferguson Act does not purport to make the states su-

preme in regulating all the activities of insurance companies and should be construed narrowly in the face of valid federal interests. *Rubin*, 160 B.R. at 278. The test adopted by *Rubin* provides that the federal statute will be precluded by the McCarran–Ferguson Act if (1) the state statute specifically relates to the business of insurance within the meaning of 15 U.S.C. § 1012(b); (2) the state has enacted law for the purpose of regulating insurance activities; (3) the activities which brought about the cause of action relates to the "business of insurance" within the meaning of the McCarran–Ferguson Act; and (4) application of the federal statute would "invalidate, impair or supersede the state law regulating insurance". *Id.*, at 279. All four prongs must be satisfied in order to find a federal statute precluded by the McCarran–Ferguson Act. *Id.*

■■■ The Trustee's Action is not precluded by the McCarran–Ferguson Act because prongs three and four of the *Rubin* test are not satisfied. With respect to prong three, the claims asserted in the Trustee's Action have nothing to do with the "business of insurance" within the meaning of 15 U.S.C. § 1012(b). Rather, the Trustee's Action seeks recovery for breaches of fiduciary duty owed to FCFC by its officers and directors under New York common law.

With respect to prong four, the Trustee's Action does not interfere with the state court's liquidation order or violate its injunction. FCFC is not "transacting FCIC's business," "wasting or disposing" of FCIC's property or "interfering with the Superintendent, as liquidator, in the possession ... control and management of FCIC's property." Instead, as discussed in the previous sections, the Trustee is asserting a claim that belongs to FCFC's estate, a claim that is separate and distinct

from FCIC's claim against its officers and directors.

### The Superintendent's Application for Relief from the Automatic Stay

The Superintendent also seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to enforce the Order of Liquidation in state court and to seek a determination of the ownership of the claims asserted in the Trustee's Action. Section 362(d)(1) provides:

(d) [T]he court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—

    (1) for cause, including the lack of adequate protection of an interest in property of such property in interest.

■ In this circuit, courts look to the factors enumerated in *Sonnax Indus., Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (1990) to determine whether there is cause to terminate or modify the automatic stay to permit litigation to continue in another forum. The factors are as follows:

1. whether relief would result in a partial or complete resolution of the issues;

2. lack of any connection with or interference with the bankruptcy case;

3. whether the other proceeding involves the debtor as a fiduciary;

4. whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

5. whether the debtor's insurer has assumed full responsibility for defending it;

6. whether the action primarily involves third parties;

7. whether litigation in another forum would prejudice the interests of other creditors;

8. whether the judgment claim arising from the other action is subject to equitable subordination;

9. whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10. the interests of judicial economy and the expeditious and economical resolution of litigation;

11. whether the parties are ready for trial in the other proceeding; and

12. impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

■ Not every factor enumerated in *Sonnax* is relevant in every case; moreover, the weight to be given to the various factors depends upon the facts and circumstances of each case. *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir.1999) ("[N]ot all of [the *Sonnax* ] factors will be relevant in every case"). The decision to grant or deny relief from the automatic stay is committed to the discretion of the bankruptcy judge. *Sonnax*, 907 F.2d at 1286.

The Superintendent alleges that cause for relief from the automatic stay exists because there is a pre-petition state court injunction governing the debtor's conduct, which is more properly interpreted by the state court, and because the McCarran–Ferguson Act requires it.

■ This Court disagrees. As discussed previously, the Trustee's Action in pursuing FCFC's claims against its own officers and directors does not violate either the state court injunction or the McCarran–Ferguson Act. Moreover, there are substantial reasons for these matters to be determined in this Court. First of all, the Superintendent's claim

that the Trustee's Action should be dismissed because of the state court injunction implicates the McCarran–Ferguson Act, a federal law which the state court has no "specialized expertise" in interpreting. Thus, factor number four enumerated in *Sonnax* mitigates in favor of continuation of the automatic stay.

Second, the Trustee's Action is potentially a significant asset of FCFC's estate. To the extent that the state court may purport to enjoin the Trustee from seeking to liquidate this asset by pursuing FCFC's claims against its officers and directors, such action may well violate the automatic stay, applicable to all entities, which prohibits, among other things "any act ... to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Questions concerning the scope of the automatic stay are appropriately determined by a bankruptcy court. 28 U.S.C. § 157(b)(A), (G). For this reason, too, there is a clear connection with and potential interference with the bankruptcy case if the question of FCFC's right to pursue this adversary proceeding is submitted to the state court for adjudication. Thus, factor number two enumerated in *Sonnax* mitigates in favor of continuation of the stay.

Factors ten and twelve also support continuation of the stay. As to factor number twelve, the automatic stay, which prevents the Superintendent from pursuing claims for injunctive or other relief against the Trustee in state court, does not impose any improper burden upon the Superintendent, because this forum is available to the Superintendent. As he has demonstrated, the Superintendent is fully capable of litigating these questions in this Court, and in fact, has already done so. On the other hand, to require the Trustee to re-litigate these issues, which have already been fully briefed to this Court, in state court, imposes an unnecessary burden and expense on the estate, and is wasteful of judicial resources. Thus, the "interests of judicial economy and the expeditious and economical resolution of litigation," which is *Sonnax* factor number ten, will also be served by the continuation of the automatic stay.

Because the Superintendent has not shown cause for relief from the automatic stay, the motion to lift the automatic stay is denied.

### *The Superintendent's Motion to Dismiss the Trustee's Fraudulent Conveyance Claims*

The Superintendent also seeks dismissal of the claims asserted by the Trustee pursuant to §§ 544, 548 and 550 of the Bankruptcy Code for recovery of fraudulent conveyances allegedly made by FCFC to certain of its directors and officers. (Doc. 1 ¶¶ 76–109.) The basis for this motion is the Superintendent's assertion that, as a factual matter, all of the payments that the Trustee seeks to recover were made by FCIC, not by FCFC. Accordingly, this aspect of the Superintendent's motion is properly treated as a motion for summary judgment under Fed.R.Civ.P. 12(b)(6), incorporated by reference in Fed.R.Bankr.P. 7012, which provides that, where matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.

In support of this assertion, the Superintendent has submitted copies of checks and other financial records of FCIC purporting to show payments by FCIC to certain of the director-defendants, who were also directors of FCIC. There is no basis from the materials submitted by the Superintendent for a trier of fact to conclude that the payments that are referenced therein are the payments that the Trustee seeks to recover, rather than separate payments made by FCIC to its directors. Accordingly, the Superintendent

has not met his burden under Fed.R.Civ.P. 56 to show the absence of any material issue of fact with regard to the Trustee's fraudulent conveyance claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Superintendent's motion seeking dismissal of these claims is therefore denied.

### *Conclusion*

For all of the foregoing reasons, the Superintendent's motion to dismiss the complaint in this adversary proceeding is denied. The Trustee is directed to settle an order consistent with this decision.